20 N.J. Super. 394 (1952)
90 A.2d 85
HOUSEHOLD FINANCE CORPORATION, A CORPORATION INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE, APPELLANT,
v.
WARREN N. GAFFNEY, COMMISSIONER OF BANKING AND INSURANCE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1952.
Decided June 20, 1952.
*397 Before Judges McGEEHAN, JAYNE and GOLDMANN.
Mr. S.P. McCord, Jr., argued the cause for appellant (Messrs. Starr, Summerill & Davis, attorneys; Mr. Charles S. Kelly and Mr. John D. Hastings, of the Illinois Bar, on the brief).
*398 Mr. Oliver T. Somerville, Deputy Attorney-General, argued the cause for respondent (Mr. Theodore D. Parsons, Attorney-General of New Jersey, attorney).
Mr. John Milton argued the cause for Personal Finance Company of Trenton, Trenton Citizens System Company and Interstate Finance Company, amici curiae (Messrs. Milton, McNulty & Augelli, attorneys; Mr. Edgar T. Higgins, of counsel).
Mr. Walter F. Waldau argued the cause for Family Finance Corporation, amicus curiae (Messrs. Stryker, Tams & Horner, attorneys).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Household Finance Corporation (hereinafter designated as "Household") appeals from the decision of the Commissioner of Banking and Insurance of New Jersey denying its application for an additional license to conduct a small loan business in Trenton, N.J., under the Small Loan Law, L. 1932, c. 62, as amended and supplemented (N.J.S.A. 17:10-1, et seq.).
Household has for many years operated a small loan office at 28 West State Street, Trenton. Its present application for a second license is for premises located at 45 East State Street, about 1 1/2 blocks away. Notice of the application was duly published and served upon all licensees having places of business in Mercer County. N.J.S.A. 17:10-5(a). Objections to the issuance of the license were filed by Personal Finance Company of Trenton, Trenton Citizens System Company and Interstate Finance Company (hereinafter designated as the "objectors"), all of them small loan licensees having their offices in Trenton. The Commissioner of Banking and Insurance thereupon designated a time and place of hearing in accordance with the provisions of N.J.S.A. 17:10-5(a).
*399 At the hearing, held July 27, 1950, Household presented a statement in support of its application, accompanied by 13 exhibits setting forth certain documentary and statistical evidence deemed pertinent. No testimony was introduced, but both Household and the objectors made oral arguments outlining their respective positions.
The Commissioner, wholly independent of the hearing, made an investigation of the application as required by N.J.S.A. 17:10-5(a). He withheld decision after the hearing, awaiting the determination of the appeal then pending in Family Finance Corp. v. Gough. The decision of the Appellate Division came down on October 19, 1950. 10 N.J. Super. 13. In view of what the court said in that case, the Commissioner sent the applicant and the objectors copies of the report of his investigation and of "A Statement on the Convenience and Advantage Clause, the Method of Application Used and the Policy Applied in New Jersey," prepared after the adoption of the Small Loan Act of 1932 by James M. Sullivan, then Chief of the Division of Personal Loan Agencies and now Chief of the Consumer Credit Division of the Department of Banking and Insurance. This statement embodies the so-called "Sullivan Formula" and is commonly so designated. The Commissioner also offered Household and the objectors an opportunity to submit additional data and to have a further hearing. Neither took advantage of the offer, but Household did submit an additional statement devoted largely to a critical analysis of the Sullivan Formula and the departmental policy based thereon.
On July 20, 1951, the Commissioner denied Household's application solely upon the ground that the convenience and advantage of the community would not be promoted by granting the second license. The applicant thereupon requested the Commissioner to reconsider his decision on the basis of the record or, in the alternative, to grant a rehearing, because his decision did not deal with the special reasons advanced by Household in support of its application. These reasons form part of the basis of the present appeal and will be referred *400 to hereafter. The Commissioner denied appellant's request on August 15, 1951.
The statutory provision involved in this appeal is N.J.S.A. 17:10-5(b), which sets forth the prerequisites for the issuance of a small loan license. The Commissioner must first find:
"(a) that the financial responsibility, experience, character and general fitness of the applicant * * * are such as to command the confidence of the community and to warrant belief that the business will be operated honestly, fairly and efficiently within the purposes of this chapter, (b) that allowing the applicant to engage in business will promote the convenience and advantage of the community in which the business of the applicant is to be conducted and (c) that the applicant has a net worth of at least twenty-five thousand dollars ($25,000.00) and has available for the purpose of making loans under this chapter at the specified location liquid assets of at least twenty-five thousand dollars ($25,000.00), * * *."
Neither the Commissioner nor the objectors question the applicant's financial responsibility, experience, character and general fitness (requirement (a) above), or its net worth and available loan capital (requirement (c) above). However, and as has already been pointed out, the Commissioner denied the application because of the convenience and advantage requirement of the statute.
On this appeal the court gave the objectors permission to file briefs as amici curiae. They seek affirmance of the Commissioner's decision. Family Finance Corporation was likewise permitted to file a brief amicus. That company does not now have a licensed small loan office in Trenton. Its application for a Trenton license was denied. A new application is now pending before the Commissioner. The company's position on this appeal is that there is ample small loan business in Trenton and that it is to the convenience and advantage of the community that the company be granted a license and the appellant a second license. If, however, it is determined that only one additional license shall be granted in Trenton, then Family Finance Corporation claims it should receive that license, as prior applicant.
*401 The issues presented by the appellant are essentially these:
(1) The Commissioner erred in finding that the issuance of a second license to Household would not promote the convenience and advantage of the Trenton community;
(2) The Commissioner failed to take into account or make adequate findings concerning the following facts presented by the applicant:
(a) Household's consistent policy of charging less than the maximum rate permitted by the Small Loan Law and less than the rate charged by any other small loan company in Trenton;
(b) The lack of necessary space in Household's present Trenton small loan office, and of management time to serve its borrowers properly;
(c) Prospective increases in the demand for small loans in Trenton, based on existing trends and on increases in the number of wage earners due to new additions to the community's manufacturing and business facilities.
(3) The Commissioner erred in the use of or in the weight given to the Sullivan Formula and to retail sales statistics.
The first and third of these contentions are interrelated and will be considered under III below. The second point is discussed under IV.
A fourth contention  that there was no support in the record for the Commissioner's finding that the eight existing small loan companies in Trenton had sufficient working capital and credit to meet the demand for small loans there and, in addition, that there were banks and credit unions in Trenton actively engaged in the business of making personal loans  has been abandoned. The record supports this finding.

I.
The convenience and advantage standard was first introduced into our small loan law in 1932 when the Legislature adopted an act modeled after the fifth draft of the Uniform Small Loan Law prepared by the Russell Sage Foundation. L. 1932, c. 62, § 4. Soon after 1935 the Commissioner of Banking and Insurance put into effect what has been described *402 as "a general policy of limitation," expressed in the Sullivan "Statement on the Convenience and Advantage Clause, the Method of Application Used and the Policy Applied in New Jersey" (the "Sullivan Formula"). Under this policy new licenses were not issued unless the Commissioner found that they would promote the convenience and advantage of the community, particularly in the light of its population and estimated loan capacity. The policy is considered to have "contributed to the elimination of unethical business practices, unfair competition, overextension of credit; and has a tendency to increase efficiency, reduce costs of operation and thereby encourage voluntary rate reduction which, after all, is most beneficial to the borrowing public's welfare." Sullivan, Administration of a Regulatory Small Loan Law, 8 Law and Contemporary Problems (Winter, 1941), pp. 148-149.
In the Family Finance case, 10 N.J. Super. 13, 21-22, this court held that the convenience and advantage clause provided a legally sufficient standard to guide the Commissioner in the exercise of the power delegated to him by the Legislature. The court also held that the Commissioner's adoption of a general policy of limitation of licenses may not be stricken down "in the absence of any showing that it does not constitute reasonable regulation of the small loan business which admittedly is clothed with a public interest and is constitutionally subject to regulation." (p. 23)

II.
This appeal is brought under Rule 3:81. Appellant urges the court to exercise the power given it by Rule 3:81-13:
"In proceedings authorized by Rule 3:81 the court shall have power to * * * make independent findings thereon, which power may be exercised by it to such extent as the interests of justice may require."
The interests of justice do not require the power granted by this rule to be exercised where the decision of the *403 administrative agency is not arbitrary and is supported by sufficient and competent evidence. Traymore of Atlantic City, Inc. v. Hock, 9 N.J. Super. 47, 48 (App. Div. 1950); D.A. Schulte, Inc. v. Jersey City, 7 N.J. Super. 184, 186 (App. Div. 1950). This would particularly appear to be so where the Legislature has expressly left the determination to the expert judgment of the administrative agency acting in a field requiring specialized knowledge as well as practical experience. See New Jersey Power & Light Co. v. Borough of Butler, 4 N.J. Super. 270, 281 (App. Div. 1949).
The rule was the same under the old prerogative practice. In Fornarotto v. Board of Public Utility Comm'rs., 105 N.J.L. 28 (Sup. Ct. 1928), the board refused to approve a permit granted the prosecutor by South Orange to operate buses along a certain route. The statute gave the board power to approve any grant of privilege or franchise to a public utility by any political subdivision of the State, after hearing and determination that the privilege or franchise was "necessary and proper for the public convenience and properly conserves the public interest." The court said (at page 33):
"This manifestly is a question of good judgment for the board to determine upon the evidence, as well as upon their knowledge of the situation presented by the existing conditions of public travel, and the general public welfare. The legislature has seen fit to delegate this power to the discretion of this board, and unless it appears that the board has reached its conclusion by a manifest violation of the law or by a clear abuse of the discretion vested in it, it is not within the power of this court to disturb the conclusion thus reached where there is evidence apparent upon which it can be reasonably supported."
This appeal presents none of the deficiencies which led to a reversal of the Commissioner's decision denying the application for a small loan license in the Family Finance case. Household was provided with a copy of the report of the Commissioner's investigation as well as of the Sullivan statement embodying the limitation policy used "as a helpful guide" in determining whether a small loan license should *404 issue. The applicant was fully informed that these two documents would "be considered together with other relevant matter" by the Commissioner in arriving at a decision, and, as has been noted, was given the opportunity for further hearing or the submission of additional data. Finally, the Commissioner's decision set forth basic findings of fact which led him to deny the requested license because it would not promote the convenience and advantage of the community.
In making this determination the Commissioner had before him not only Household's statement in support of its application and the very complete documentary and statistical material accompanying it, but also the report of his own independent investigation, the Sullivan Formula, the annual reports submitted to him by small loan companies and by banks and credit unions engaged in making personal loans, which reports contain a wealth of pertinent statistical information, and the additional statement submitted by Household a month after it had received copies of the investigation report and Sullivan Formula. The determination below was based on the following express findings:
"From all the facts before me, I find that the City of Trenton is one of the major business and industrial centers in the State; that its population of 127,894 according to the 1950 Federal census is an increase of 2.56% over its 1940 census figure of 124,697 as compared to a county increase of 15.12% and a state increase of 16.23%; that the increase in retail sales between 1939 and 1948 as shown by the Federal census of business is 161.86% as compared to a county increase of 191.34% and a state increase of 182.89%; that the retail sales in Trenton in 1948 were $171,195,000 or an average of $21,399,375 per small loan office as compared to an average of $22,580,000 throughout the state; that there are eight licensed small loan offices in the City of Trenton, one of which was licensed August 2, 1948; that in the trading area of Trenton three small loan licenses were granted within the past two years, namely, one in Princeton on October 4, 1949, one in Ewing Township and one in Hamilton Township during the year 1950; that there is healthy competition between the small loan licensees in the city and in the trading area and they have sufficient working capital and credit to meet the demands for small loans there; that there are six banking institutions, six state credit unions and thirteen Federal credit unions in the City of Trenton engaged actively in the business of making personal loans; that the demands for small loans in the *405 city to which this application relates and in the city's trading area are being served adequately by the small loan licensees now doing business there; * * *."
These findings are adequate.

III.
The first of appellant's two main lines of attack centers upon the factors which entered into the Commissioner's determination that "allowing the applicant to engage in business will not promote the convenience and advantage of the community in which the business is proposed to be conducted." There appears to be no question that the findings are supported by the record. The argument, rather, involves the use of and weight given to some of these components.
In developing its argument Household first addressed itself to the meaning of the word "community" in N.J.S.A. 17:10-5(b) (b). Its contention that the Trenton "community" could not be confined to the municipal boundaries finds support in the record and is correct. So is its observation that what the precise geographical area should be is a question of fact. Household contends that for the purposes of the convenience and advantage standard the Trenton community includes: (1) the "primary trading area," comprising the city itself, the surrounding townships, and Morrisville, Pa., and also (2) the "secondary trading area" which includes all of Mercer County and the peripheral area as far as Flemington, Rocky Hill, Hightstown, Browns Mills, Mount Holly and Burlington, as well as the communities of Bristol, Langhorne and Newtown in Pennsylvania. It is conceded that the Commissioner considered these areas in arriving at his decision. What he had to say on this score throws light on some of the other facts which entered into his determination:
"It is to be noted that in the so-called primary trading area, in addition to the eight small loan licensees now doing business in Trenton, there is one in Ewing Township and one in Hamilton *406 Township. The propriety of considering Morrisville in the State of Pennsylvania may be open to some question. In any case, it is to be observed that there are also two small loan licensees doing business in that municipality. With respect to the so-called secondary trading area, there are small loan licensees doing business in Mount Holly, Burlington and Princeton. Although only a part of the so-called secondary trading area would appear to have a bearing upon the instant application, nevertheless, in arriving at my decision, I have considered the convenience and advantage of the entire secondary trading area and the primary trading area as defined by the applicant."
Appellant contends, however, that there is not the same measure of agreement between it and the Commissioner as to the best technique for determining the number of potential borrowers in the Trenton community. It argues that there are two possible methods for measuring the license needs of a community  the Sullivan Formula and retail sales volume. Household is extremely critical of the former and favors the latter as the "best available method."
The Sullivan Formula,[1] in the view of the appellant, is unworkable for a number of reasons: (1) "It is now nearly 20 years since the computations upon which the formula is based were worked out." (2) "The formula is based entirely on the population residing within the municipal boundaries of the city where the licensed office would be located. The formula makes no allowance for the fact that certain municipalities are `trade centers,' which are patronized not only by their residents but also by the residents of surrounding areas." (3) "It ignores the fact that the city boundaries of Trenton have not been changed for over 100 years although the metropolitan area has continued to grow."
*407 The first of these reasons finds it refutation in the Sullivan "Statement on the Convenience and Advantage Clause, the Method of Application Used and the Policy Applied in New Jersey," where it is made apparent that the probable loan capacity of each community "is adjusted yearly by showing the number of licensees in each community and the number and amount of outstanding loans." The data necessary for such revisions is available to the Commissioner in the annual reports rendered by small loan licensees. R.S. 17:10-12. In fact, the appendix filed by appellant recapitulates the very data which the Commissioner would require for a proper application of the Sullivan Formula for as late a date as December 31, 1949.
The second reason advanced against any use of the formula relates to its making no allowance for the fact that certain municipalities are trade centers. Again, reference to the Sullivan statement negates the argument. A full quotation is enlightening:
"In addition to the above formula [see note 1] many other factors must be considered. In estimating the present actual loan service it is necessary, in appraising the need for additional licenses, to consider the volume of personal loan departments in both state and national banks and the service rendered by credit unions, both state and federal. The present excess cash and unused credit of the presently licensed companies is ascertained from reports in our office or from the books of the licensee. Consideration must also be given to the various types of industry, its regularity of employment, the nearness of other trading centers, the distribution of licensees in the surrounding area, and transportation. * * *"
It is evident that the Commissioner, in applying the formula to a particular case, makes allowance for trade centers and patronage from outside sources, as well as for other factors.
The third stated objection loses its force when one considers the various factors considered in applying the formula, and that the interaction of other trade areas upon the community in question is taken into account.
The difficulty with appellant's position in this aspect of the appeal is its preoccupation with the word "formula." *408 At best it is merely a popular designation given to a general policy statement which involves a great deal more than a strict mathematical computation. Its proper application goes far beyond the working out of the equation (.0936) x (population) x (average outstanding loan) = estimated loan capacity of the community. The quotation from Sullivan shows that the determination of whether a particular license shall issue involves a complex of many important factors.
The Sullivan statement, read in its entirety, represents a considered and practical approach to a difficult policy problem. It not only explains the derivation of a possible formula but its limitations as well. The study is the only one of its kind, and is additionally valuable because it was made in this State, for use in this State. This court approved the Sullivan Formula as "a general policy of limitation" in Family Finance Corp. v. Gough, 10 N.J. Super., at pp. 21-22.
No valid reason has been advanced why the Commissioner should not consider the Sullivan Formula. He informed appellant that he would consider it, "along with other relevant matter," and he apparently did. His decision states that the Department of Banking and Insurance regards the study "as a helpful guide in applying the Small Loan Law, * * *." This and the rest of the decision make it crystal-clear that the Commissioner did not consider the Sullivan study controlling but used it as only one of many determinants in arriving at his conclusion.
Appellant complains, however, that the Commissioner's decision "does not indicate how the elements in the statement of policy were applied or weighted, nor does he state whether, and to what extent, the Sullivan Formula was applied and the results produced by such application in this proceeding." There is no requirement holding the Commissioner to so precise a standard of definition. He did not have to state what use he made of, or the weight he gave to, the Sullivan Formula or any of its elements. He was only obliged to consider the record as a whole and, for the purpose *409 of appellate review, to set forth his findings so that the court can determine whether there is sufficient evidence to support them and whether they logically lead to the conclusion at which he arrived. Family Finance Co. v. Gough, above.
There is no mandate here as in Pennsylvania R.R. Co. v. New Jersey State Aviation Commission, 2 N.J. 64 (1949) where the statute (R.S. 6:1-52) directed that "Every order of the commission shall contain findings in sufficient detail to enable a court to determine the controverted questions presented by the proceeding, and whether proper weight was given to the evidence." Failure to comply with that provision was held to constitute an error of substance. There is no statutory requirement here that the Commissioner base his findings and decision upon specific factors expressly set out in the statute, as in New Jersey Bell Tel. Co. v. Communications Workers, etc., 5 N.J. 354 (1950), involving the Labor Disputes in Public Utilities Act (N.J.S.A. 34:13B-27). In the absence of such legislative mandate, all that is required is that the evidence be considered in the light of the statutory standard, and where the findings justify the conclusion of the administrative agency nothing more is required.
Contentions similar to that advanced by the appellant were made and rejected in Baltimore & Ohio R.R. Co. v. United States, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209 (1936) and Secretary of Agriculture v. Central Roig Refining Co., 338 U.S. 604, 70 S.Ct. 403, 94 L.Ed. 381 (1950). The first of these cases involved an order of the Interstate Commerce Commission relating to the division of joint rates on Florida citrus fruit among participating carriers. The commission was required to decide whether, in respect to such joint rates, the carriers had discharged the duties imposed upon them by 49 U.S.C.A., § 1(4) "to establish just, reasonable and equitable divisions thereof as between the carriers * * * participating therein which shall not unduly prefer or prejudice any of such participating carriers." The appellants claimed that the order was arbitrary because the *410 commission subordinated all matters which it was required to consider to another element. The court, in overruling this contention, said 298 U.S. at pp. 359-360, 56 S.Ct. at p. 803, 80 L.Ed. at p. 1219:
"* * * There is no single test by which `just,' `reasonable,' or `equitable' divisions may be ascertained; no fact or group of facts may be used generally as a measure by which to determine what division will conform to these standards. Considerations that reasonably guide to decision in one case may rightly be deemed to have little or no bearing in other cases. Error as to the weight to be given financial needs, operating costs or other material facts is not a misconstruction of the act.
The report shows that the Commission received much evidence bearing upon the standards set by section 15 (6) to govern it in making the divisions. Appellants' claim that the order rests exclusively upon the southern lines' financial needs is negatived by the record. Many other facts were shown to have been presented and considered. There is no requirement that the Commission specify the weight given to any item of evidence or fact or disclose mental operations by which its decisions are reached. Useful precision in respect of either would be impossible. And it would be futile upon the record to attempt definitely to ascertain the weight assigned to any fact or argument in prescribing the divisions. We find no support for appellants' claim."
The Central Roig Refining case involved an order of the Secretary of Agriculture under the Sugar Act of 1948 (7 U.S.C.A. §§ 1100-1160), allotting the 1948 Puerto Rican refined sugar quota among the various refineries of the island. The statute directed the Secretary to make allotments "in such manner and in such amounts as to provide a fair, efficient, and equitable distribution of such quota or proration thereof, by taking into consideration" three factors: (a) processings of sugar to which proportionate shares pertained. (b) past marketings, and (c) ability to market the amount allotted. Commenting on this provision, the court said (338 U.S. at pp. 611-614, 70 S.Ct. at pp. 407-408, 94 L.Ed. at pp. 389-390):
"* * * Plainly these are not mechanical or self-defining standards. They in turn imply wide areas of judgment and therefore of discretion. The fact that the Secretary's judgment is finally expressed *411 arithmetically gives an illusory definiteness to the process of reaching it. Moreover, he is under a duty merely to take `into consideration' the particularized factors. The Secretary cannot be heedless of these factors in the sense, for instance, of refusing to hear relevant evidence bearing on them. But Congress did not think it was feasible to bind the Secretary as to the part his `consideration' of these three factors should play in his final judgment  what weight each should be given, or whether in a particular situation all three factors must play a quantitative share in his computation. * * *
* * * Obviously one factor may be more influential than another in the sense of furnishing a better means of achieving a `fair, efficient, and equitable distribution.' But it is not consonant with reason to authorize the Secretary to find in the context of the situation before him that a criterion has little value and is entitled to no more than nominal weight, but to find it unreasonable for him to conclude that this factor has no significance and therefore should not be at all reflected quantitatively. * * *
* * * And it was within his province to exclude from his determination the processings of sugar to which proportionate shares pertained. It is not for us to reject the balance he struck on consideration of all the factors unless we can say that his judgment is not one that a fair-minded tribunal with specialized knowledge could have reached."
To agree with the appellant that the Commissioner must indicate with definiteness the use he made and the weight he gave to the Sullivan Formula and its several elements would be to impose a requirement not found in the statute or in the decisions. Such a requirement would be an exercise in futility. The operation of the mind upon a problem such as was here presented defies precise description. The statistician's device of weighted factors cannot be imported into the application of the statutory standard of community convenience and advantage.
We turn, then, from the appellant's attack upon the Sullivan Formula to its contention that retail sales figures are the best available method of determining the potential loan demands of a community. The Commissioner had these figures before him in the exhibits introduced by Household at the hearing. His decision shows that he considered them as a factor in his final determination. The argument that the Commissioner failed to state in the form of definite findings *412 the degree of weight he attached to these figures falls for the reasons expressed in dealing with the same contention as to the Sullivan Formula.
At best, retail sales figures are only one factor among many to be considered in estimating the number of potential borrowers in a community. There are a number of assumptions which, though not expressed, are obviously encompassed in the view that retail sales are a valid standard. We need examine only a few.
One is that people normally tend to make loans in the places where they trade. It may be true that people in a particular area normally tend to trade in its trade center, but it is not necessarily true that they will trade there for all purposes. Many needs are filled locally, and the extent to which they are satisfied depends upon the existence of sub-trade centers in the orbit of the larger center and the type of needs to be filled. It cannot be assumed that a person seeks small loan credit as an incident of a shopping tour and that he would not use the small loan services in a more convenient sub-trade center, even though such place might not have the facilities to satisfy all his needs. The fact is that there were four loan offices outside Trenton in what appellant claims is Trenton's "primary trading area" at the time of the Commissioner's determination  one each in Ewing Township and Hamilton Township, and two in Morrisville, Pa. In the "secondary trading area" there were three  one each in Princeton, Burlington and Mount Holly. These are available to and are undoubtedly used by local residents who sometimes shop in Trenton.
A second assumption is that retail sales figures are an accurate and reliable gauge. Their correlation to the small loan potential of a community can only be approximate. A ready example is the retail sales volume of a resort area like Atlantic City. In such a place a great proportion of retail sales comes, not from potential small loan borrowers, but from transients. In a more limited measure the retail sales figures of Trenton are affected by the fact that being the state *413 capitol and close to a large military installation, Fort Dix, it attracts the purchasing power of many transients.
A third assumption is that there is a close correlation between retail sales and the need for small loan services. This assumption cannot be sustained. Retail sales figures reflect total sales in the following categories: (a) food group; (b) eating and drinking places; (c) general merchandise group stores; (d) apparel group; (e) furniture, furnishings and appliance group; (f) automobile group; (g) gasoline service stations; (h) lumber, building and hardware group; (i) drug and proprietary stores; and (j) all other retail establishments. Purchases in categories (a), (b), (g) and (i) are unlikely to involve the need for small loans.
There is the further consideration that a large proportion of small loans are made for purposes other than retail purchases. One of appellant's exhibits, a prospectus filed by it with the Federal Securities and Exchange Commission, dated May 15, 1950, analyzes over 1 1/2 million loans made by Household during 1949 and the principal purposes for which borrowers said they required them. Of the entire group, 19.68% were needed in order to consolidate overdue bills; 17.40% were for medical, dental and hospital bills; 6.67% for travel expenses; 5.86% for assistance to relatives; 3.44% for real estate and mortgages; 3.40% for taxes; 1.45% for insurance. There were smaller percentages for rent, education, funerals and "miscellaneous." These figures, unrelated to retail sales as that term is generally defined in business statistics, make it a matter of real doubt whether there is an accurate correlation between retail sales volume and small loan demand.
Appellant claims that the Commissioner, in using retail sales figures, should not have compared the average retail sales per small loan office in Trenton, $21,399,375, with the corresponding average of $22,580,000 for the whole State. The comparison, it maintains, should have been between Trenton sales per licensee and sales per licensee in cities of similar size  Paterson, Camden and Elizabeth, which are in the *414 100,000-150,000 population range. Then, if Household received a second license, the average retail sales per Trenton licensee would be $19,000,000, which practically matches the $19,800,000 average for all cities in Trenton's population range. However, this argument disregards another of appellant's contentions  that Trenton is the center of a "primary trading area" whose population is 199,700. If this area be considered a single community for the purposes of small loan business, and a comparison is then made with cities in the 150,000-249,000 class, average retail sales per licensee would be $26,900,000. The Commissioner's finding was thus more favorable to Household's application.
A new line of attack is exposed in appellant's reply brief, where it is contended that the commissioner decided the case on a mistaken theory  he denied the license "on the sole ground that existing lending facilities are adequate to supply the demand for small loans." Appellant argues that it is impossible to infer from the existence of a supply that a demand is being met, and that the Commissioner erred in making no basic findings on the amount and extent of the need or demand for small loans.
A reading of the text of his decision, and particularly the sections quoted above, shows that the existence of available loan capital in substantial amount was not the sole ground on which the Commissioner proceeded. He referred, among other things, to population statistics, retail sales figures and credit institutions in Trenton and in the surrounding area. The record shows that Trenton borrowers are amply provided for, as are borrowers from outside Trenton. Whatever demand there is for small loans is being met. The Commissioner was not bound to relate in detail his appraisal of the prospective number of borrowers. It is patent from the information produced at the hearing that the credit facilities of small loan licensees, banks and credit unions have not as yet felt the strain of borrower demand, nor are they likely to find their resources taxed in the foreseeable future.
*415 The reply brief makes the additional point that "the convenience and advantage clause is designed to prevent competition which is harmful to the public, and a license may be denied on that ground, but not otherwise." The introductory clause has substantial corroboration in the history of the Small Loan Law (Hubacheck, Annotations on Small Loan Laws (Russell Sage Foundation, 1938), p. 54; Family Finance Corp. v. Gough, 10 N.J. Super., at page 22), but it does not in logic and law support the conclusion. Healthy small loan competition is the goal, but laissez faire is not to be substituted for the Commissioner's statutory discretion. If it is, the sure victim will be the convenience and advantage clause written into our act two decades ago. That act (N.J.S.A. 17:10-5) does not say that licenses shall be granted on the mere finding that harmful competition does not exist and is unlikely.
The extremes that can be reached by importing into the statute conditions which are not there is demonstrated by the contention of amicus curiae, Family Finance Corporation, which contends that the Commissioner must grant a license unless it can be proved that a small loan business of $25,000 cannot be done. Seemingly this is based on the third requirement of the licensing section (N.J.S.A. 17:10-5 (b)) which creates the three separate and distinct tests mentioned above: (a) character and fitness, (b) community convenience and advantage, and (c) $25,000 net worth and an available liquid loan capital of like amount. Amicus curiae has transported the minimum capital requirement into the convenience and advantage clause. The capital requirement has no bearing on how that clause should be interpreted.

IV.
The second of Household's two principal grounds of appeal is addressed to the failure of the Commissioner to take into account and make adequate findings on three factors which appellant contends are of major importance: (1) *416 Household's limited office facilities, (2) its lower small loan rates, and (3) the prospective increased demand for small loans in Trenton.
The Commissioner was not obliged to express his view on every contention made by Household, and this is particularly true of those which are not sound in logic, or are not supported by evidence, or have no pertinence in law. His duty is fulfilled when he makes basic findings of fact adequate to support his final determination, provided the findings are in turn supported by sufficient evidence and are consistent with the authority granted to him by the Legislature.
(1) Limited facilities. Household represents that its Trenton office is the largest small loan office in New Jersey. It has enjoyed a substantial growth in small loan accounts in recent years. It employs nine girls but has space for only six desks. Household requires its managers to counsel and advise with customers concerning the budgeting of family income. It is impossible for the Trenton manager to give the required attention to Household's 5524 borrowers. Household is unwilling to move to other and larger quarters because of possible loss of good will and the expense involved. It insists that a second office is the only solution.
All this is without significance in the proper application of the convenience and advantage clause. Household's problem is simply one of internal management, and that problem is not to be resolved by insisting upon a new license whenever it feels itself cramped for space. Its difficulty may promptly be solved by proper administrative decisions made within its own organization. If Household feels that it is handicapped in its present accommodations, the remedy is to apply for a change to more commodious quarters in Trenton. The Legislature has designated the procedure to be followed. R.S. 17:10-8. There is nothing to show that an application for change of location would not be approved.
The claim that the local manager must see every borrower when a loan is made, if true, indicates nothing more than the need of adopting a more efficient counselling service. Assistant *417 managers and special counsellors are the answer to a 5500-customer load  not an additional license.
The size of an office cannot be the determinative factor in deciding whether a second license should issue. The Commissioner's concern is with the small loan situation in the community as a whole.
(2) Loan rate. Here the contention is that if it "is not otherwise clear" that an additional license is needed in Trenton, the fact that Household charges a rate lower than the statutory maximum should be a decisive factor and result in its being granted a second license, because of the benefits to the competitive situation in Trenton.
The proposal may immediately be dismissed with the brief answer that it was "otherwise clear" to the Commissioner that there was no need for another license in Trenton. His opinion states as plainly and clearly as may be that he found that the issuance of the requested license would not promote the convenience and advantage of the community.
Further, the contention has no solid foundation in fact. In the first place, all who borrow in Trenton have access to Household's office and can benefit from any lower loan rate that may be in force there. Denial of a second license to Household does not deprive them of the advantage. Secondly, the proofs submitted by Household show that it maintains the lower rate only when it considers it practical to do so. Appellant in its reply brief concedes the point and states:
"To avoid any possibility of misunderstanding, appellant repeats that it never has represented, and does not now represent, that if licensed it will continue to charge a lower than statutory rate at all times and under all conditions. In fact, the present lower rate of charge in New Jersey will be discontinued soon. * * *"
Thus, even though Household were charging a lower rate at the time of the granting of the license, there is and can be no guaranty that its rate would not be increased to the maximum. The quotation from the reply brief, affirmed on the oral argument, shows Household going back to the maximum *418 rate, and this within less than a year of the Commissioner's denial of its application. The only way to insure the charging of a lower rate would be to make the rate a condition of the license. The statute, of course, gives the Commissioner no such authority, nor does any one suggest the existence of such power, express or implied. The fact is that competition, economic conditions and governmental regulation dictate loan rates, and not the good will of a mass lender like Household, with its more than 500 offices in 29 states and Canada and total assets of almost a quarter-billion dollars.
(3) Prospective increased demand for loans. Household notes that the volume of loans outstanding in Trenton increased by 150% in the period December 31, 1941-December 31, 1949, as compared with only 120% for the State as a whole. In that period the number of Trenton licensees remained at eight while the number throughout the State increased 50%. It calls attention to the new United States Steel (Fairless) plant on the Delaware River four miles below Morrisville, Pa., construction on which began in 1950. Household represents that this plant lies within the Trenton trade area. Fairless will employ an estimated 10,000 to 15,000 workers, and they will increase the present total number of wage earners in the area by 12 1/2% or more. All of this spells out for Household an increased small loan potential.
The record before the Commissioner was replete with figures and analyses showing the past rate and future prospects for growth in the Trenton community. It cannot be assumed that the Commissioner gave no consideration to them; the presumption is the other way. That he did consider them is reflected in his decision.
The small loan potential envisaged by Household obviously depends on the new steel plant in Pennsylvania. The Commissioner was not bound to give any particular consideration to the trend projected by Household because the convenience and advantage of the self-contained community now rising around the Fairless plant is essentially the concern *419 of Pennsylvania. However, the Commissioner did, as appellant urged, consider the expanded trade area which includes that development in arriving at his conclusion.
The employment of trends or prospects in the making of findings of fact was adversely criticized by the Supreme Court in New Jersey Bell Tel. Co. v. Communications Workers, 5 N.J. 354 (1950) at page 373. Trends, said the court, "are illusory." "A `trend' may change its direction at any time. * * *"
There was, therefore, no obligation upon the Commissioner to make findings of fact as to any of the three factors urged by appellant.

V.
Our review of the record leads to the conclusion that the evidence supports the Commissioner's basic findings of fact, and that these findings are adequate and support his determination. There was no abuse of discretion. The Commissioner acted well within his delegated power in denying the application. The decision below is affirmed.
NOTES
[1] The Sullivan formula was originally based on a 1930 survey showing that at that time 36% of the New Jersey population would need small loan credit from time to time, and that at any given moment an average of 26% of this 36%, or 9.36% of the population, would actually be indebted to a small loan company. The estimated loan capacity of a community is calculated by multiplying the probable number of borrowers by the amount of the average outstanding loan.