SNELLING AND SNELLING, INC., et al., Complainants-Appellants, v. JOHN A. PARNELL et al., Defendant-Appellee.—440 S.W.2d 23.

Middle Section. December 6, 1968.

Certiorari Denied by Supreme Court April 21, 1969.

Howell & Fisher, Nashville, for complainants-appellants.

Harlan Dodson, Nashville, for defendant-appellee.

TODD, J. Complainants, Snelling and Snelling, Inc., James F. Ingham and Margaret H. Ingham, filed a bill seeking a declaratory judgment favorable to their interpretation of a contract between Snelling and Snelling,

Inc., and the defendant, John A. Parnell. The chancellor ruled adversely to complainants, and they have appealed.

Complainant, Snelling and Snelling, Inc., hereafter referred to as complainant corporation, is a Pennsylvania corporation engaged in the business of conducting an employment agency in Philadelphia and promoting a nationwide system of local employment agencies by training and licensing individuals to operate affiliated employment agencies under the copyrighted name, Snelling and Snelling.

On July 14, 1961, complainant, Snelling and Snelling, Inc., and defendant, John A. Parnell, entered into an agreement whereby defendant Parnell was granted:

"the *exclusive* right to use the name Snelling and Snelling (R) in connection with one office only to be opened by licensee *in Nashville, Tennessee.* * * *" (emphasis supplied)

Before opening his office in Nashville in September 1961, defendant Parnell organized a Tennessee Corporation under the name, Snelling and Snelling of Nashville, Inc., which corporation has ever since exercised the privileges granted to defendant Parnell in said agreement and has paid the monthly charges due plaintiff corporation under said agreement. Snelling and Snelling of Nashville, Inc., is joined with John A. Parnell as defendant and cross-complainant, and is hereafter referred to as defendant corporation.

On February 16, 1968, complainant corporation entered into an agreement with complainants, James F. Ingham and Margaret H. Ingham, granting to the Inghams the "non exclusive" right to use the registered trade name

"Snelling and Snelling" in the operation of an employment agency to be located within the boundaries of:

"*Suburban Nashville, Tennessee,* office to be located in Davidson County *outside 1961 city limits* shown on map attached." (emphasis supplied)

The "Original Bill for Declaratory Judgment and Other Relief" alleged that defendant Parnell had assigned his privileges under his contract to the defendant corporation in violation of said contract; that because of said assignment, said contract had been terminated by notice as provided therein; and that defendants were threatening litigation to prevent the exercise of the franchise granted to the complainants Ingham and Ingham. The bill prayed (1) that, unless defendant corporation should sign a proposed new contract limiting its franchise to the 1961 city limits of Nashville, the contract of complainant corporation with defendant Parnell be terminated; (2) in the alternative, that the original agreement between complainant corporation and defendant Parnell be decreed to remain in effect only so long as Parnell remains active in defendant corporation; and (3) that the rights granted to Parnell under said original agreement be decreed to be limited to the geographical limits of the municipal corporation, Nashville, Tennessee, as they existed on July 14, 1961.

The defendants by joint answer and cross bill substantially admitted all of the material allegations of fact of the bill but alleged that the defendant corporation was organized upon the advice of and with full knowledge and acquiescence of the complainant corporation; that the complainant corporation by its long dealing with defendant corporation was estopped to complain of the

participation of defendant corporation in performance of the contract in the place and stead of, or as the instrumentality of, defendant Parnell; that the words, "in Nashville, Tennessee" in said original agreement were intended to mean the "Metropolitan Nashville" area; and that the franchise granted to the Inghams violated the exclusive rights granted in said original contract.

The cross bill prayed for an injunction to prevent the complainants-cross defendants from using the name, "Snelling and Snelling" within the area of "Metropolitan Nashville" and further prayed that the rights of defendants-cross complainants be decreed to be as insisted in their answer and cross bill.

The answer of the complainants to the cross bill of defendants is a reiteration and enlargement of the insistencies of the original bill.

After an oral hearing, the chancellor filed an opinion which held:

"It is my judgment that 'Nashville, Tennessee' as written in the original contract meant the city and retail trading zone of Nashville, Tennessee.

\*     \*     \*     \*     \*     \*

"It seems perfectly evident to me that from the inception of this contract the complainant knew of the incorporation of Snelling and Snelling, Inc., of Nashville and the many exhibits which are in the record prove this fact. The complainant acquiesced in every respect.

"By its conduct it is my judgment that complainant is estopped and has waived the technicality of the contract."

The decree of the chancellor denied all relief prayed for in the original bill, and permanently enjoined the complainants-cross defendants from using the name "Snelling and Snelling", within "the area of Metropolitan Nashville which includes all territory within the boundaries of Davidson County, Tennessee". The decree further authorized the continuance of defendants' business activities "as being acquiesced in by the original complainant and cross defendant."

The chancellor pretermitted the question of the rights of the parties in event defendant Parnell should cease to control defendant corporation.

The assignments of error raise the same issues which were determined by the chancellor, viz:

(1) The meaning of the words "in Nashville, Tennessee" as used in the original contract with Parnell.

(2) The effect, if any, upon the rights of Parnell resulting from the incorporation of his business.

Complainants insist that the words "in Nashville, Tennessee" are plain and unambiguous, that no extraneous evidence is required for interpretation, and that the clear meaning of the contract restricted the rights of defendant Parnell to the geographical area of the corporate limits of the city of Nashville as they existed on the date of the contract, July 14, 1961.

Complainants correctly point out that the original agreement used only the words "Nashville, Tennessee" to describe the exclusive territory granted to Parnell and does not contain the words "Metropolitan", or "area" or Davidson "County." With equal accuracy, it may be pointed out that the contract contains no such

words as "city limits", "corporate limits", or "urban area".

■ Complainants further, and correctly, point out that there is no satisfactory evidence that the parties at the time of execution of the agreement contemplated or intended that the words "in Nashville, Tennessee" were to mean "Metropolitan Nashville", "the Nashville Metropolitan area", "the Nashville trade area", "the Nashville trading zone", or "Davidson County". With equal accuracy, it may be pointed out that there is no satisfactory evidence in the record to show a joint understanding that the words, "in Nashville, Tennessee", should mean "within the corporate boundaries of the municipal corporation of Nashville, Tennessee as presently constituted". The words, "in Nashville, Tennessee", must be accorded and assigned their reasonable, ordinary meaning and interpretation in the context in which they were used. Edwards v. Travelers Indemnity Company, 201 Tenn. 435, 300 S.W.2d 615 (1957).

Complainants cite and rely upon Mascaro v. Snelling and Snelling of Baltimore, Maryland Court of Appeals, 250 Md. 215, 243 A.2d 1 (May 31, 1968). Under the peculiar facts of that case the words "in Baltimore, Maryland" were held to mean within the corporate limits of the city of Baltimore, Maryland. The Mascaro opinion is not authority for the inflexible rule that the word "in" used in connection with a city, town or village always means within the corporate boundaries of such city, town, or village. The word must be interpreted in each case according to the context in which used.

In the case of Rogers v. Galloway Female College, 64 Ark. 627, 44 S.W. 454, 39 L.R.A. 636 (1898) there was a

suit upon a subscription note given upon oral representation that a college would be established "in" or "at" Searcy, Ark. The lower court found as a fact that the word "at" had been used rather than "in", however the Arkansas Supreme Court said:

"But should we concede that 'at' was used by the parties in the sense of 'in,'—which is the most that can be claimed for it under the proof,—still it does not follow that it means 'within the corporate limits.' In [First Nat.] Bank [of Owatonna] v. Wilson, 62 Ark. [140] 143, 34 S.W. 544, Judge Riddick said, 'There may be towns that have overgrown their corporate limits.' Generally, in speaking of a town as a mere place of geographical location, we have no reference whatever to the corporate limits, but simply use the name of the town as designating the aggregate body of people living in such considerable collection of dwelling houses, and in such proximity as to constitute a town, as distinguished from the country. Stand. Dict., 'Town.' For instance, if the bishop did say, 'We propose to locate a college "in" Searcy,' no one would have been justified in concluding from that language alone that he meant 'within the corporate limits of Searcy,' as contradistinguished from that part of the town lying beyond the corporate limits * * *" 44 S.W. at 456.

As was pointed out in Edwards v. Travelers, Supra, many words have various shades of meaning from the general to the specific, but the use of such words does not automatically result in an ambiguity.

"The meaning of the word, however, is determined by the context in which it is employed." 201 Tenn. at 439, 300 S.W.2d at 617.

■ It is characteristic of the English language that many words have varied meanings. As a result, the intended meaning of a word or phrase frequently must be gathered from the context in which used. If the parties had a clear, mutual understanding of the intended meaning of a word their mutual understanding must control. If not, the courts must presume that the intended meaning was that which appears reasonable when viewed in the light of the circumstances and context in which the word was used. Such recourse to circumstances and context does no violence to the parol evidence rule. Knoxville, C. G. & L. R. Co. v. Beeler, 90 Tenn. 548, 18 S.W. 391 (1891); Faulkner v. Ramsey, 178 Tenn. 370, 158 S.W.2d 710 (1942).

The context in which the words "in Nashville, Tennessee" were used in the present case is significant. The parties were at a distant point. They did have before them a map of Nashville and its environs. Their contract contains no reference to corporate limits. There were about 50 or 55 "Snelling and Snelling" offices in 20 states, but there was no such office anywhere in the State of Tennessee. The parties had no cause or motive to "split hairs" over the exact boundaries of an exclusive territory, and there is no satisfactory evidence that they intended to do so.

■ When one speaks of a distant, unfamiliar city, he refers to the collection of shops, factories, churches, schools and homes that are known collectively by the city name. There is generally no effort to obtain a copy of the municipal charter and have a survey made of the exact boundaries of the municipality, nor is any thought given to the prevalent and well known situation in which some metropolitan communities are actually composed of

a number of municipalities. It is a matter of universal knowledge that communities, whether partly or wholly composed of one or several municipal corporations, are designated under a well known community name. It is likewise universally known that a community is never exactly co-extensive with the exact corporate limits of the municipality of the same name.

■ In Household Finance Corp. v. Gaffney, 20 N.J. Super. 394, 90 A.2d 85 (1952) it was held that municipal boundaries are not determinative as to what constitutes a community, and what the precise geographical area should be is a question of fact. Under the facts of the present case, this Court has determined that the words "in Nashville, Tennessee" mean within the community of Nashville, Tennessee, which is that cluster or assembly of business and social institutions and homes extending from a dense central business section outward and uninterrupted to and including the outer or suburban parts of the community.

In the light of the foregoing, the use of the words "suburban Nashville, Tennessee" used in the Ingham agreement become significant and determinative of this case.

In Philadelphia, B. & W. R. Co. v. Mayor and Council of Wilmington, 30 Del.Ch. 213, 57 A.2d 759 (1948) it was held that "Suburban" property is located in the outskirts of a city or town.

In State ex rel. Town of White Bear v. City of White Bear Lake, 225 Minn. 28, 95 N.W.2d 294 (1959) it was held that "suburban" property is that which has been developed primarily for residential rather than agricultural purposes and is therefore properly conditioned for annexation to a municipality.

In Rowland v. City of Greencastle, 157 Ind. 591, 62 N.E. 474 (1902) it was held that the suburban part of a city is the outlying part, that portion of the city which is remote from the center of trade and population, where houses are generally more or less scattered, and where many of the improvements and advantages enjoyed by the central and more densely populated parts of the city are wanting; further that the suburban part of the city may be used for business, or it may be occupied by residences, or it may be used for both residence and business purposes.

In the ordinarily accepted meaning of the words, "Suburban Nashville, Tennessee" means, "that part of Nashville, Tennessee which is removed from the congested center of the community but is none the less a part of the community." The second contract with the Inghams, granting to them the right to open an office under the name "Snelling and Snelling" in "Suburban Nashville" was a violation of the exclusive right, previously granted to Parnell to open an office under the name "Snelling and Snelling" in Nashville, Tennessee. This being true, the second contract with the Inghams was and is invalid and subject to restraint at the suit of Parnell.

Invalidation of the Ingham contract renders unnecessary any further inquiry into or adjudication of franchise rights beyond the community of Nashville, Tennessee, which issue is expressly pretermitted and reserved.

Complainants insist that the contract with Parnell should be terminated because it has been assigned, or that the defendant corporation should be compelled to execute a new and different contract in lieu of the Parnell contract, or that the contract should now be interpreted to mean that the defendant corporation shall be allowed

to operate under the contract only so long as Parnell shall be in control of defendant corporation.

Complainants' insistence upon the termination or rewriting of the Parnell contract is based solely upon an alleged assignment of the contract from Parnell to defendant corporation. As stated in complainants' rebuttal brief:

> "*Second,* Snelling and Snelling, Inc., has based *no* claim and its counsel have based *no* logic on any 'premise that the [contract] had been violated by an incorporation of the business without permission,' as stated in the reply brief. [p. 2] The claim relates only to *assignment* of the license."

The record contains no testimony of the actual assignment of the contract to defendant corporation. There is no suggestion that defendant corporation claims any interest in said contract. The record clearly indicates that defendant Parnell is utilizing his privileges and performing his obligations under said contract by and through the defendant corporation.

In the absence of any evidence whatsoever of the overt assignment of the contract, and, in view of the admitted fact that complainant corporation approved of Parnell's organization of defendant corporation and repeatedly recognized defendant corporation as the instrumentality through which he utilized his franchise agreement, we must agree with the chancellor that nothing appears in this record to justify the termination of the Parnell contract.

Since we hold that defendant Parnell has the right to continue to do business through the corporation as here-

tofore, there is no occasion to pass upon the insistence that the corporation be required to submit to a new and different contractual arrangement.

For the same reason, there is no occasion to rule upon the rights of the parties in event defendant Parnell should cease to be in charge of defendant corporation. Such a situation may or may not ever arise. The making or refusing of a declaratory judgment is discretionary, and making of declarations under the statutes should be exercised with the utmost caution. Ball v. Cooter, 185 Tenn. 631, 207 S.W.2d 340 (1948).

The Declaratory Judgment Act deals only with present rights that have accrued under presently existing facts, and gives the courts no power to determine future rights or possible controversies in anticipation of events that may or may not occur. Third National Bank in Nashville v. Carver, 31 Tenn.App. 520, 218 S.W.2d 66 (1948).

Since this Court has considered none of the questioned evidence in reaching its conclusions, it is unnecessary to rule upon the several complaints as to admission of evidence. As indicated, this Court has considered only the circumstances and context in existence at the time of the execution of the Parnell contract. None of the statements of the parties as to their understanding of the contract have been considered in this Court. The two contracts themselves are the best evidence of their inconsistency such as to render legal coexistence of both impossible.

Complainants are also perturbed because the chancellor informally made reference to his personal experiences reflecting upon the meaning of the words "in Nashville,

Tennessee". Although opinions are cited which suggest an attack upon the judicial integrity of the chancellor, complainants' brief assures this Court that no such attack was intended in the present case. Such reassurance is accepted by this Court as sufficient vindication of the judicial character of the chancellor, in derogation of which this record contains not a scintilla of evidence.

█ The record does not disclose whether the personal information embodied in the chancellor's remark was considered as evidence, judicially noticed, or merely mentioned as an analogous situation in discussing a point of law. In the absence of an affirmative showing otherwise, this Court assumes that the Chancellor considered only competent evidence and disregarded incompetent evidence. Furthermore, as previously indicated, the decision of this Court is not predicated upon any of the disputed evidence.

The decree of the chancellor and the injunction awarded therein is modified to limit its application to the community of Nashville, Tennessee, including suburban Nashville. As thus modified, the decree is affirmed, and the cause is remanded for further proceedings.

Costs of this appeal are adjudged against the complainants.

Affirmed as modified and remanded.

Shriver, P.J.(M.S.), and Puryear, J., concur.