N. C. Edwards

*v.*

Travelers Indemnity Co.

(*Nashville,* December Term, 1956)

Opinion filed March 8, 1957.

Pierce Winningham, Jr., Jackson, for Complainant.

Moss & Benton, Jackson, for Defendant.

Mr. Justice Swepston delivered the opinion of the Court.

We granted *certiorari,* the case has been argued and we now dispose of same.

N. C. Edwards was insured in the Travelers Indemnity Company under a farmer's comprehensive personal liability policy which provided under ''Coverage A''—''Liability'' as follows:

''To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom sus-

tained by any person, and as *damages because of injury to or destruction of property,* including the loss thereof.''

Under the list of exclusions the policy provided under section (f) as follows:

"Under Coverage A, to injury to or destruction of (1) property *used by,* rented to or in the care, custody or control of insured, or (2) any goods or products manufactured, sold, handled or distributed by an insured, or work completed by or for an insured, out of which the injury or destruction arises.''

While said policy was in full force and effect the insured made a contract with an independent contractor to do some land clearing for him, using two bulldozers. The insured had no control over the manner in which the work was to be done, nor was he in charge of, or responsible in any way for the care and custody of the bulldozers.

On account of the work being done during the cold weather the contractor would drain the radiator of each bulldozer in the evening, leave it in the field until next morning, and then refill the radiator before starting up the motor. One morning the insured went down early before the arrival of the contractor or any of the latter's employees, and undertook to start one of the bulldozers and to mark out a line along the edge of the field up to which he desired the contractor to do the clearing. Before starting the engine the insured replaced the water in the radiator and closed the draincock on the radiator but failed to close a similar draincock on the motor-block. This allowed the water to drain out, as a result of which,

after the bulldozer had been run a few hundred yards, the motor became overheated and severely damaged the motor-block.

As a result of the foregoing, the contractor obtained a judgment in the amount of $1,770.49 against the insured in the General Sessions Court. The Insurance Company assisted in the defense of said suit with a reservation of its right to claim that it was not liable to the insured under the policy. After satisfying said judgment the insured filed its bill in the Chancery Court against the Company and there recovered a judgment against the Insurance Company for the amount of the damages it had paid to the contractor as a result of said judgment in the Sessions Court.

The question here is the same as was made in the Court of Appeals and that is whether or not the insured was *using* the contractor's bulldozer within the meaning of that term as set out in the policy at the time the damage was done to the bulldozer. The same insistences were made by the respective parties in the Court of Appeals as are now made in seeking an answer to the question of law presented.

The Company contends that the language of the policy is clear and unambiguous and therefore the provision of the exclusion stating, "this policy does not apply to injury to property used by the insured," requires no construction by the Court. On the other hand the insured insists that the word *used* is itself ambiguous so as to require construction of the term and that any doubt involved must be resolved against the Insurance Company and in favor of the complainant.

The Court of Appeals accepted the view of the Insured and affirmed the action of the Chancellor in rendering judgment against the Company.

With deference to the able Chancellor and the Court of Appeals we are of opinion that said Courts were in error in holding that the property was not being used by the insured within the meaning of the terms of the policy and that it was error to render a judgment against the Company.

The argument made in behalf of the insured and the view taken by the Court of Appeals seems to be that since the word *use* or *used* has various shades of meaning from the general to the specific, its presence in a sentence necessarily makes an ambiguity. If that were true, it would be almost impossible to write an average sentence that would be free of ambiguity. For instance, take the word "float." We commonly think of an object floating on the water, yet it may mean to float in the air, to be unstable, to become detached from its usual mooring, to float a bond issue, to flood an area, and so on. See:—Webster's New International Dictionary, 2nd ed.

The meaning of the word, however, is determined by the context in which it is employed.

The only case which has been cited by counsel containing the identical language of the policy in the instant suit is *Great American Indem. Co. of N.Y. v. Saltzman*, 8 Cir., 213 F.2d 743, 746. The language in the two policies is identical. In that case the insured was an airplane owner and enthusiast. Upon landing at an airport he undertook without any authority, knowledge nor consent of the owner of another aircraft to inspect the same. As he entered the plane the engines were not operating and he

had no intention of activating any of the machinery but was simply inspecting it to familiarize himself with the various instruments and controls. He mistakenly thought that he could engage the starter control without starting the engines. Much to his amazement, when he pressed the starter button, the engines started, the plane took off inside the hangar, ran about 90 feet and crashed into a brick wall, thereby severely damaging the aircraft.

The Court in holding that the insured was not using this plane in the sense of the word as used in the exclusion clause said:

"The decisive question in this case is not what abstract definition may be given the word 'used' but rather what the term meant as used in the exclusionary provisions of the policy. We are clear that at the time of the occurrence which resulted in the damage to the * * * plane plaintiff was not using the aircraft nor was he attempting to use it. That was not his purpose in entering the cockpit of this craft but he was simply inspecting and somewhat carelessly handling certain gadgets connected with the mechanism. Had the owner or pilot in control of the craft been present it is not conceivable that the plaintiff would have requested of him the privilege of using the plane, but manifestly, his request would have been for the privilege of inspecting it. * * *"

The Court then set out various definitions of the word "use" and in quoting from another case, (D.C., 115 F. Supp. 944) had this to say in part:

"Of course if the term 'use' is construed to embrace all its possible meanings and ramifications, practically every activity of mankind would amount to a 'use' of

something. However, the term must be considered with regard to the setting in which it is employed. In the instant case the policy excludes injury to property used by the insured and does not apply to the use, including loading and unloading, of aircraft. The Court is convinced that the term 'use' as employed in the exclusionary clause was intended to mean and does mean the ordinary use or employment of the property or aircraft.''

Now, in the present case it seems perfectly clear that the insured was employing this piece of machinery for his own purpose and benefit, and that he was necessarily using the same under the ordinary usual meaning of the word. Also the proof shows that the machine was being used for its ordinary general purpose, that is, he intended to lower the blade down fairly close to the ground to mark off the limit of where he wanted the contractor to carry the breaking up of the ground; it is common knowledge that these machines are very versatile in their performance in moving soil and trees and related activities.

We are, therefore, of opinion that there is no ambiguity in the language of the exclusionary provision, but that the insured seeks to create an ambiguity by insisting that the word ''used'' be qualified and restricted to mean that the insured must be using the property legally, rightfully and with the consent of the owner. It is settled law, however, that neither the parties nor a Court can create an ambiguity where none exists, and then undertake to apply the rule of construing the language liberally in favor of the insured and strictly against the Company. *Wallace v. State Farm Auto Ins. Co.* 187 Tenn. 692, 216 S.W.2d 697.

The only Tennessee case that is similar to the instant case is *State Automobile Ins. Co. v. Connable-Joest, Inc.,* 174 Tenn. 377, 125 S.W.2d 490, 492. Both parties rely on that case also. The language of the exclusionary clause there was "for damages to or destruction of property owned, rented, leased, in charge of, or transported by the assured." The insured there operated a public garage and the damage was done when an automobile belonging to a customer the Company was greasing on a rack, became overbalanced and fell off. There, the insured insisted that the phrase "in charge of" was synonymous with the associated words "owned, rented, leased, * * *." The object of the plaintiff in this insistence was to distinguish claims for damages to customers' automobiles from damages to automobiles in charge of the insured by reason of ownership, lease, rental, or while being transported by the insured.

The Court rejected this insistence and stated that it would do violence to the plain language of the policy.

In the instant case the insured attempts to apply the above case by insisting that the phrase "used by" is substantially equivalent of the phrase "in charge of," appearing in the above case, and then arguing from that point that the phrase "used by" appearing in the present case can only mean used with the consent of the owner. We are unable to follow that insistence. The phrase "in charge of" undoubtedly implies that the possession or use is with the consent or knowledge of the owner. The same cannot fairly be said of the phrase "used by" because every-day experience tells that many people use many things belonging to others without the consent of the latter; and it would clearly do violence to

the language of the policy in the instant case to hold that the phrase "used by" is substantially the same in meaning as the associated words "rented to, or in the care, custody, or control of the insured."

We are, therefore, of opinion that the language of the exclusionary clause is clear and not ambiguous, that the insured was using the property of the contractor within the meaning of said clause and, therefore, his loss was not covered by the policy.

Let the judgment below be reversed and the suit dismissed.