**Ann Zanola EDWARDS, Johnny Zanola, Jr., Rosa Zanola Calvert, Louisa Zanola Gardino and Serafina Zanola Facelli, Plaintiffs-Appellants,**

v.

**MALER CONSTRUCTION COMPANY, A Tennessee Corporation, and Roger J. Maler, Individually, Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

April 23, 1986.

Rehearing Denied Sept. 8, 1986.

Application for Permission to Appeal Denied by Supreme Court June 16, 1986.

Henry L. Klein, Memphis, for plaintiffs-appellants.

William M. Walsh, Hanover, Walsh, Jalenak, & Blair, Memphis, for defendants-appellees.

FARMER, Judge.

This is a suit for deficiency by the holders of a series of notes against the maker, Maler Construction Co. (corporation), and its president, Roger J. Maler, following foreclosure proceedings pursuant to the deed of trust.

In May, 1979, the corporation purchased from plaintiffs a tract of real estate containing 7.05 acres abutting Lamar Avenue in Memphis. Sellers financed a portion of the purchase price with the debt being evidenced by the notes, which were secured by the deed of trust. The property was referred to throughout this matter as the "front area" (being the portion abutted by Lamar Avenue) and the "rear area". As provided in the deed of trust, holders agreed to release therefrom upon payment based on a set dollar amount per square foot. A modification agreement was entered into on October 5, 1982, modifying the trust deed whereby the holders agreed to release square footage upon payment of principal of $1.107 per square foot, so long as the corporation was not in breach of any of the provisions of the notes. Roger J. Maler (Maler) executed this modification agreement individually as well as for the corporation. The agreement further provided as follows:

"For each square foot of 'front area', that is released, after execution of this agreement, that is, the area running from Lamar Avenue northeasterly for a distance of 200 feet, and as a condition to said release, Roger J. Maler personally guarantees payment of the indebtedness secured by this Deed of Trust in the amount of $1.107 \times 1.5 \times$ the square footage of the front area that is released, said guarantee to apply to the indebtedness secured by the 'rear area' that is, the area lying to the rear of said 200 feet in depth from Lamar Avenue. Whenever any portion of the rear area is released from the lien of this Deed of Trust pursuant to the payment provisions hereof, the personal guarantee of Roger J. Maler will be reduced by the amount of principal payment made for the purposes of release of said rear area. The personal guarantee will not be released in connection with payments for purposes of release of the front area."

The "front area" consisted of four lots, lot 4 having been released at closing. Applying the formula, the parties are in agreement that Mr. Maler's personal guarantee was $129,107.17.

The foreclosure sale realized $135,000, leaving a deficiency of $89,776.91. The trial court, sitting without a jury, entered judgment for the plaintiffs against the corporation for the amount of the deficiency plus interest, attorneys' fees and costs totaling $104,741.08. With respect to Maler individually, the court held that, under the court's interpretation of the modification agreement, his personal guarantee was extinguished upon payment of $135,000 pursuant to the foreclosure sale.

The issue on appeal is whether the court erred in finding that defendant Roger J. Maler was not liable on his personal guarantee as set forth in the modification agreement to the deed of trust. Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Rule 13(d) T.R.A.P.

There being virtually no dispute as to the material facts, this case deals with the interpretation of the modification agreement. The portion of the agreement containing Mr. Maler's personal guarantee provides that for each square foot of "front area" *released*, and as a condition to said release, Maler personally guarantees payment of the indebtedness secured by the deed of trust in an amount determined by formula set forth therein, said guarantee to apply to the indebtedness secured by the "rear area". (At the time of foreclosure, the front area had been released from the deed of trust.) Whenever any portion of the rear area is *released* ... pursuant to the payment provisions hereof, the personal guarantee will be reduced by the amount of principal payment made for purposes of *release* of said rear area. Thus the question is whether sale at foreclosure constitutes a release within the meaning of the agreement.

Looking at the agreement as a whole, as well as the original deed of trust, it appears obvious what the parties contemplated to be the meaning of the term "release". In the deed of trust, the holders of the notes agreed to *release* square footage from the lien created by the document upon payment of a sum certain by the maker, or by assignments of rents in the event of leasing. In the modification agreement, holders further agreed to *release* the rear area " ... pursuant to the payment provisions hereof ..." whereupon Maler's personal guarantee would be reduced by the amount of payment made for the purpose of *release* of said area. Appellee points out in his brief that the agreement makes no provision for foreclosure sale. This being so, we must look to the agreement as worded. Plaintiffs agreed to release portions of the secured property, while protecting themselves by maintaining adequate security on the remaining property, an arrangement not uncommon in transactions of this nature.

T.C.A., § 47–50–112(a) provides as follows:

Contracts to be enforced as written— (a) All contracts, including, but not limited to, notes, security agreements, deeds of trust and installment sales contracts, in writing and signed by the party to be bound, including endorsements thereon, shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written; provided, however, nothing herein shall limit the right of any party to contest the agreement on the basis it was procured by fraud or limit the right of any party to assert any other rights or defense provided by common law or statutory law in regard to contracts.

Mr. Maler testified as follows:

Q. Read that.

A. Whenever any portion of the rear area is released from this lien, from the lien of this deed of trust pursuant to the payment provisions hereof, the personal guarantee of Roger J. Maler will be reduced by the amount of principal payment made for purposes of releases of said rear area.

Q. Now, that says whenever any portion of the rear area is released, that's when you get credit; is that right?

A. That's correct.

Q. Is that what it says?

A. Yes.

Q. That's what you understood when you entered into it, right?

A. Yes.

Q. Was any of that rear area ever released?

A. No, sir.

At the time of trial, the foreclosure sale of the rear area had taken place. Yet Mr. Maler testified, upon reading from the modification agreement, that none of the rear area was ever released. His testimony clearly points out what he understood the term "release" to have meant. Let us suppose that makers had approached holders with a contract for the sale of the rear area for $135,000 (the price brought at foreclosure) and requested holders to release that area, being all of the property remaining subject to the deed of trust.

Would the makers have reasonably believed holders would so agree when the remaining debt exceeded $200,000 and the holders would then become unsecured?

As stated in *Bauman v. Pickwick Greyhound Lines, Inc.*, 14 Tenn.App. 242, 249 (1931),

> "The ascertainment of the expressed intention of the parties is the prime object of the interpretation of all written contracts. *Conley v. Pacific Mutual Life Insurance Company*, 8 Tenn.App. 405.
>
> In construing a contract the courts will consider the object and intent of the parties, the nature of the subject matter, the relation of the parties to each other, and the objects to be accomplished. *McKay v. Railroad*, 133 Tenn. 590, 182 S.W. 874; *Railroad v. Iron Co.*, 118 Tenn. 194, 101 S.W. 414; *Nunnelly v. Warner Iron Co.*, 94 Tenn. 282, 29 S.W. 361.
>
> It is the duty of the court to ascertain the surroundings and conditions, and to construe the contract for the purpose of carrying out the objects to be accomplished. *Hardwick v. Can Co.*, 113 Tenn. 657, 88 S.W. 797; *Southern Railroad v. Bacon*, 128 Tenn. 169, 159 S.W. 602; *Sullivan County v. Ruth & Co.*, 106 Tenn. 85, 59 S.W. 138; *Railroad v. Iron Co.*, 118 Tenn. 194, 101 S.W. 414.
>
> The circumstances and conditions of the parties are the best guides to construction. *Southern Publishing Assn. v. Clements*, 139 Tenn. 429, 201 S.W. 745; *Neilson Canning Co. v. Lowe*, 149 Tenn. 561, 260 S.W. 142."

We find that it is obvious from reading the agreement as a whole what the parties meant by the term "release". That upon payment to holders, whenever any portion of the rear area is *released*, the personal guarantee of Maler will be reduced by the amount of principal payment made for purposes of release of said area. In other words, payment would be made to holders, they would release the pertinent portion of property from the lien created by the deed of trust, and Mr. Maler's personal guarantee would be reduced by the amount paid holders in consideration for making the release.

The trial court stated in its ruling from the bench that there was perhaps some vagueness in the application of the paragraph concerning the personal guarantee, and since the document was prepared by plaintiffs, the court would necessarily have to favor the non-preparing party in interpreting the document. We agree that a document containing patent ambiguities is to be construed in favor of the non-preparing party. However, we do not find the pertinent language to be ambiguous. A strained construction may not be placed on the language used to find ambiguity where none exists. *Moore v. Moore*, 603 S.W.2d 736 (Tenn.1980). Neither the parties nor the court can create an ambiguity where none exists. *Edwards v. Travelers Indemnity Co.*, 201 Tenn. 435, 300 S.W.2d 615 (1957).

We find further that the sale of the secured property at foreclosure did not constitute a release within the meaning of the agreement. The judgment of the trial court is reversed and the cause is remanded for entry of judgment against the defendant Roger J. Maler in the amount of One Hundred Four Thousand, Seven Hundred Forty-One and 08/100 ($104,741.08) Dollars plus costs. The costs of the appeal are taxed to the defendant Maler, for which execution may issue if necessary.

TOMLIN, P.J., and MATHERNE, Special Judge, concur.