IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 21, 2004 Session

## ONE COMMERCE SQUARE, LLC v. AUSA LIFE INSURANCE COMPANY, INC.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. CH-01-1015-3     The Honorable Arnold B. Goldin, Chancellor**

---

**No. W2003-02956-COA-R3-CV - Filed September 8, 2004**

---

Appellant purchaser of commercial building sued appellee seller to recover payment of a tenant improvement allowance made by the appellee to a tenant pursuant to a lease agreement assigned to the purchaser as part of the transaction. The trial court granted appellee seller summary judgment based upon a construction of the terms of the assignment transferring the lease to the purchaser. Appellant purchaser appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Henry C. Shelton and Amy M. Pepke of Memphis for Appellant, One Commerce Square, LLC

Henry L. Klein and Bruce M. Smith of Memphis for Appellee, AUSA Life Insurance Company, Inc.

**OPINION**

On June 9, 1999, AUSA Life Insurance Company, Inc. ("AUSA," "Defendant," or "Appellee") and an entity known as Development Services Group, Inc. ("DSG") entered into a Purchase and Sale Agreement (the "Agreement"). Under the Agreement, AUSA agreed to sell the real property known as the One Commerce Square Building, Memphis, Tennessee (the "Property") to DSG or its assignee. Thereafter, DSG assigned its rights as purchaser to One Commerce Square, LLC ("OCS," "Plaintiff," or "Appellant").

On or about September 1, 1999, OCS purchased the Property from AUSA. In connection with the sale of the Property, the parties entered into an "Assignment and Assumption of Leases and Security Deposits" (the "Assignment"). The Assignment reads as follows:

AUSA Life Insurance Company, Inc. ("Assignor"), in consideration of the sum of Ten and No/100 Dollars ($10.00) in hand paid and other good and valuable consideration, the receipt of which is hereby acknowledged, hereby assigns, transfers, sets over and conveys to One Commerce Square, LLC ("Assignee"), all its interest as Lessor in and to all leases in effect at the real property...commonly known as One Commerce Square, Memphis, Tennessee, as shown on the certified Rent Roll attached hereto as Exhibit "B" ("Existing Leases").

Assignee hereby accepts the foregoing Assignment and agrees to assume, fulfill, perform and discharge all the various commitments, obligations and liabilities of Assignor under and by virtue of the Existing Leases hereby assigned, which arise on or after the effective date hereof, including the return of security deposits, and does hereby agree to defend, indemnify and hold harmless Assignor from any and all claims or losses incurred by Assignor by reason of the failure of Assignee from and after the effective date hereof to fulfill, perform and discharge all of the various commitments, obligations and liabilities of Assignor under and by virtue of the Existing Leases assigned hereunder, including the return of security deposits, which arise on or after the date hereof, including losses relating to reasonable attorney's fees and expenses incurred to resolve such claims or losses.

Assignor shall remain liable for performing and discharging obligations and liabilities relating to Existing Leases for which it was responsible and which arose during Assignor's ownership of One Commerce Square prior to the date hereof, with the exception of obligations or liabilities related to the payment of money for which a proration credit has been given to Assignee (in which instance such payment obligation shall be Assignee's and is hereby assumed by Assignee) and Assignor shall defend, indemnify and hold harmless Assignee from such claims or losses incurred by Assignee arising prior to the effective date hereof and as a result of Assignor's obligations under the Existing Leases.

Assignor specifically agrees to remain liable for paying any specific monetary amounts which may be owed to any tenant under the Existing Leases arising out of disputes related to billings for Tenant's Share of Operating Costs, but only during Assignor's ownership of One Commerce Square prior to the date hereof and not hereafter, and Assignor shall defend, indemnify and hold harmless

Assignee from payment of such specific monetary amounts. Assignee shall promptly pay to Assignor any and all amounts paid by tenant under Existing Leases for Operating Costs incurred, or attributable to the period of time, prior to the date hereof.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the __1st__ day of September, 1999, which Assignment is effective on that date.

One of the leases assigned was that of the law firm of Glankler Brown, PLLC ("Glankler"). On August 31, 1994, Glankler had entered into a Second Lease Amendment (the "Amendment") for an extension of its existing Lease. The Amendment, *inter alia*, gave Glankler the option to vacate certain space on the 18th floor of the building. The Amendment also provided for a tenant improvement allowance to be paid to Glankler by the landlord in two (2) installments of $172,370.00, the first installment being payable on February 9, 1995, and the second installment payable on March 1, 2000. The Amendment further provided that if the tenant exercised its option to vacate part of the space, there would be a reimbursement of a portion of any tenant improvement allowance allocated to the tenant.[1]

Glankler completed its tenant improvements prior to the purchase and sale of the Property. AUSA paid Glankler its first tenant improvement allowance of $172,370.00, which became due on February 9, 1995. Pursuant to the Amendment, the second tenant improvement allowance became due on March 1, 2000. AUSA did not pay this second allowance as it took the position that the obligation to pay the second installment arose after the September 1, 1999 sale of the Property and, therefore, was the obligation of OCS pursuant to the Assignment. OCS made demand upon AUSA to make payment to Glankler, which demand was refused. OCS paid Glankler the second tenant improvement allowance. OCS seeks reimbursement in this action.

---

[1] The portion of the Amendment relating to the tenant improvement allowance reads, in relevant part, as follows:

9. Tenant Improvement Allowance.

(a) Subject to the conditions set forth below, Landlord shall provide Tenant with the following tenant improvement allowances: (i) on February 9, 1995, $172,370, representing $5.00 per rentable square foot with respect to the Demised Premises (the "First Allowance Payment"), and (ii) on March 1, 2000, an amount equal to $5.00 per rentable square foot of office space then being leased by Tenant (the "Second Allowance Payment"), excluding any portion of the Demised Premises that Tenant has notified Landlord of its intention to vacate pursuant to Paragraph 3 or 4 above. Both the First Allowance Payment and the Second Allowance Payment may be used by Tenant to perform renovation and improvements to the Demised Premises and/or the payment of rent due hereunder...

-3-

On May 16, 2001, OCS filed a "Complaint for Breach of Contract" against AUSA, seeking reimbursement of $172,370.00 for AUSA's alleged breach of the Assignment. On June 21, 2001, AUSA filed its "Answer of Defendant and Counterclaim," in which AUSA denied liability for Glankler's second tenant improvement allowance under the Assignment and counterclaimed, under the Agreement, for costs and expenses incurred in the litigation. OCS answered the Counterclaim on September 5, 2001.

On June 14, 2002, OCS filed "Plaintiff's Motion for Summary Judgment," along with a statement of undisputed facts and affidavits in support thereof. On August 15, 2002, AUSA filed "Defendant's Response to Plaintiff's Motion for Summary Judgment and Counter-Motion for Summary Judgment," along with a statement of undisputed facts in support thereof.

The cross-motions for summary judgment were heard by the trial court on September 9, 2003. On October 27, 2003, the trial court entered its "Order Granting Summary Judgment to Defendant/Counter-Plaintiff" (the "Order").

OCS appeals from the Order and raises two issues for review as stated in its brief:

> I. Whether the Chancery Court erred in holding that the obligation to pay Tenant for tenant improvements was existing prior to the September 1999 closing date but did not arise until the payment was due on March 1, 2000?

> II. Whether Appellant waived its right to seek indemnification for payment of Tenant's tenant improvement claim which was a liability of Appellee's arising prior to the September 1, 1999 closing date?

Resolution of the first issue in this case is solely dependent upon the construction of the provisions of the Assignment signed by the parties hereto and the Amendment signed by Glankler and AUSA. It is well settled that the language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc*., 521 S.W.2d 578 (Tenn.1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Ballard v. North American Life & Casualty Co.*, 667 S.W.2d 79 (Tenn.Ct.App.1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat'l Bank*, 620 S.W.2d 526 (Tenn.Ct.App.1981). A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d at 462 (citing *Oman Constr. Co. v. Tennessee Valley Authority*, 486 F.Supp. 375, 382 (M.D.Tenn.1979)), nor can this Court create an ambiguity where none exists in the contract. *Cookeville P.C.*, 884 S.W.2d at 462 (citing *Edwards v. Travelers Indem. Co.*, 201 Tenn. 435, 300 S.W.2d 615, 617-18 (1957)). Courts cannot make contracts for parties but can only enforce the contract that the parties themselves have made. *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234

S.W.2d 830 (1950). The interpretation of a written contract is a matter of law and not of fact. *See Rainey v. Stansell*, 836 S.W.2d 117 (Tenn.Ct.App.1992).

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ.P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. Summary judgment is a preferred vehicle for disposing of purely legal issues. *See Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993); *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31 (Tenn.1988). Since the construction of a written contract involves legal issues, construction of the contract is particularly suited to disposition by summary judgment. *Browder v. Logistics Management, Inc.*, 1996 WL 181435, 1996 LEXIS Tenn.App. 227 (Tenn.Ct.App.1996); *see also Rainey*, at 119. Since only questions of law are involved in this issue, there is no presumption of correctness regarding the trial court's grant of summary judgment. *Bain* at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

The gravamen of this issue is when the obligation to pay Glankler the second tenant improvement allowance arose, or came into being. OCS contends that the obligation arose and was fixed at the time the Amendment was signed on August 31, 1994 and that the obligation was a personal covenant of AUSA's. AUSA contends that the obligation to pay Glankler the second improvement allowance arose on March 1, 2000, the date it was due and payable under the Amendment.

There is no ambiguity in either the Amendment between Glankler and AUSA or in the Assignment between AUSA and OCS. Consequently, our determination of whether AUSA is liable for the second improvement allowance rests in the plain language of the documents.

Under paragraph two of the Assignment, OCS specifically agreed to "discharge all the various commitments, obligations and liabilities of [AUSA] under and by virtue of the Existing Leases [, which would undisputedly include the Amendment between AUSA and Glankler,] hereby assigned, which [arose] on or after the effective date [of the Assignment, i.e. September 1, 1999],...." AUSA, under paragraph three of the Assignment "remain[s] liable for performing and discharging obligations and liabilities relating to Existing Leases for which it was responsible and which arose during [AUSA's] ownership of [the Property]." The question of when the obligation to pay Glankler's second improvement allowance arose can only be gleaned from the Amendment.

Turning to the Amendment, Paragraph 9(a) thereof (*see* footnote 1 *supra*) specifically gives Glankler the right to receive two separate payments for tenant improvements. However, those payments are neither due upon the completion of the tenant improvements, nor are they payable at AUSA's discretion. Rather, the plain language of the Amendment specifies that payment one is due "on February 9, 1995" and payment two is due "on March 1, 2000." The cardinal rule in construing

contracts is to ascertain the intent of the parties. ***Walker v. Tennessee Farmers Mut. Ins. Co.***, 568 S.W.2d 103 (Tenn. Ct. App.1977). Here, that intent is clear–Glankler had no right to payment one until February 9, 1995 because AUSA had no obligation to pay until that date; likewise, Glankler had no right to payment two until March 1, 2000 because AUSA had no obligation to pay until that date. Under the plain and unambiguous language of this Amendment, the only way we could impose an obligation upon AUSA to pay the second improvement allowance before the March 1, 2000 date would be if no specific date had been written into the contract. In that case, this Court could have applied a reasonable time standard in determining when AUSA should be obligated to make the second payment to Glankler. However, this Court cannot make a contracts for the parties but can only enforce the contract that the parties themselves have made. ***McKee v. Continental Ins. Co.***, 191 Tenn. 413, 234 S.W.2d 830 (1950). Since AUSA and Glankler specified the dates for payment, we cannot undermine their intent by imposing an arbitrary obligation on AUSA to pay the second payment prior to March 1, 2000, when, under the plain language of the Amendment, that obligation arose.

We find that AUSA's obligation to pay Glankler's second payment arose on March 1, 2000. Since OCS assumed liability for AUSA's commitments, obligations, and liabilities arising "on or after the effective date" of the Assignment (i.e. September 1, 1999), OCS was contractually obligated to pay Glankler's second improvement allowance.

Alternatively, OCS argues that AUSA's payment of tenant improvements to Ernst & Young (another tenant), under a separate lease (i.e. the lease between AUSA and Ernst & Young), demonstrates that all tenant improvements, including Glankler's, were AUSA's responsibility. We disagree. In short, the record does not indicate that the language of the Ernst & Young lease was identical to that of the Amendment between AUSA and Glankler.[2] Because a contract hinges upon the language used therein, we cannot apply a blanket standard based upon actions taken under one contract, which is not a carbon copy of another.

Having found that, under the plain language of the Assignment, OCS is liable for the payment of Glankler's second improvement allowance, we find that the second issue concerning an alleged waiver of OCS's right to recover from AUSA is moot.

For the foregoing reasons, we affirm the Order of the trial court. Costs of this appeal are assessed against the Appellant, One Commerce Square, LLC, and its surety.

---

[2] The Ernst & Young lease, which was executed in July 1999, reads, in relevant part, as follows:

> Upon the Scheduled Commencement Date, Tenant shall submit an application for payment of the Tenant Improvement Allowance to Landlord. The application for payment shall be accompanied by executed final and unconditional lien waivers from the general contractor and all subcontractors, materialmen and suppliers. Payment of Tenant Improvement Allowance to Tenant shall be made within twenty (20) business days after Landlord's receipt thereof in reasonably satisfactory form.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.