IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 9, 2007 Session

## MELBA B. HOMRA, ET AL. v. HAROLD ELLIOTT NELSON

**A Direct Appeal from the Chancery Court for Haywood County**
**No. 13054     The Honorable George R. Ellis, Chancellor**

**No. W2007-00001-COA-R3-CV - Filed March 14, 2008**

This case arises from a dispute over an antenuptial agreement. Appellant Husband and wife entered into an antenuptial agreement, whereby Husband was obligated to pay for daily necessities. Wife executed a durable power-of-attorney, naming her adult Children, the Appellees herein, as her attorneys-in-fact. When Wife became unable to care for herself because of advancing Alzheimer's, a dispute arose between Husband Appellant and Children Appellees as to who would be responsible for the costs associated with wife's care. The trial court held that, under the antenuptial agreement, Husband Appellant was responsible for these expenses. Husband Appellant appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J. joined and JOHN EVERETT WILLIAMS, J., dissents.

James S. Haywood, Jr. of Brownsville, Tennessee for Appellant, Harold Elliott Nelson

Mary Jo Middlebrooks and Betty Stafford Scott of Jackson, Tennessee for Appellees, Melba B. Homra and George B. Bridgewater

S. Jasper Taylor IV of Bells, Tennessee, Guardian Ad Litem

**OPINION**

Harold Elliott Nelson ("Husband," or "Appellant") and Bess Parks Bridgewater Nelson were married on March 20, 1993. This was the second marriage for both. Prior to their marriage, on March 17, 1993, Mr. Nelson and Mrs. Nelson entered into an "Antenuptial Agreement." At the time the Agreement was executed, both Mr. Nelson and Mrs. Nelson were represented by their respective attorneys. After approximately ten years of marriage, Mrs. Nelson was diagnosed with Alzheimer's Disease. On August 23, 2004, Mrs. Nelson executed a Durable Power-of-Attorney, naming her two children from her first marriage, Melba B. Homra and George B. Bridgewater (together "Children," or "Appellees"), as her attorneys-in-fact.

By January of 2005, Mrs. Nelson's health had deteriorated to the point that she was placed in the Sugar Creek Retirement Center, an assisted living facility in Brownsville, Tennessee. Mrs. Nelson's Children, as her attorneys-in-fact, paid for Mrs. Nelson's living expenses at Sugar Creek from Mrs. Nelson's separate property. Mr. Nelson paid $800 per month in order to live at Sugar Creek with Mrs. Nelson.

Mrs. Nelson's Alzheimer's progressed to the point that she was no longer able to live at Sugar Creek. Mr. Nelson and the Children decided to move Mrs. Nelson to Elmcroft, a skilled nursing facility in Jackson. Mr. Nelson executed the required paperwork for Mrs. Nelson's admission into Elmcroft. On December 22, 2005, Mr. Nelson notified Elmcroft, by letter from his lawyer, that he was "rescinding the Assisted Living Residency Agreement executed by him, on behalf of his wife." The letter indicates that a copy of same is being sent to the Children "so that they will be aware as of February 1, 2006 they will have to use their mother's assets for her care...."

On February 3, 2006, the Children, as next friend of Mrs. Nelson, filed a "Complaint for Legal Separation" on behalf of Mrs. Nelson against Mr. Nelson. As grounds, the Children assert, *inter alia*, that Mr. Nelson "has refused or neglected to provide for [Mrs. Nelson]...." On February 16, 2006, Mr. Nelson filed his answer to the "Complaint for Legal Separation," asserting, *inter alia*, that the Children had no standing to bring this action. By Order of February 28, 2006, the court appointed a Guardian Ad Litem for Mrs. Nelson. Upon motion of the Children, the original complaint was amended, by Order of March 6, 2006, to include a claim for breach of contract on the part of Mr. Nelson, and to pray for injunctive relief, enjoining Mr. Nelson to provide for Mrs. Nelson's living expenses in accordance with the "Antenuptial Agreement."

On August 11, 2006, Mr. Nelson filed a "Motion to Revoke Durable Power of Attorney," seeking to remove the Children as Mrs. Nelson's attorneys-in-fact. Based upon the report of the Guardian Ad Litem, to which Mr. Nelson filed an objection, Mr. Nelson asserts, in his motion, that the Children, and specifically Mr. Bridgewater, have "acted in a fraudulent manner in the handling of [Mrs. Nelson's] business matters...."

A hearing on the merits was held on September 27, 2006.[1] Thereafter, on November 30, 2006, the trial court entered its Order, which reads, in pertinent part, as follows:

> [T]he Court finds as follows:
>
> 1. That paragraph three of the antenuptial agreement requires [Mr. Nelson] to be responsible for providing food and other daily necessities for the parties following their marriage.

---

[1] The trial court's order indicates that, in reaching its decision, it considered the record as a whole. The record contains transcripts from proceedings held on February 24 and 27, 2006, as well as transcript from the September 27, 2006 hearing. We have reviewed all transcripts provided, along with the other documents contained in the appellate record.

2. That the expenses involved in being in a nursing home are daily necessities.

3. That paragraph four of the antenuptial agreement requires that each party shall be responsible for their own Medicare Supplement insurance expenses.

4. That [the Children] shall be responsible for those insurance costs of the ward.

5. That the responsibilities of [Mr. Nelson] for nursing home expenses and also the [Children's] responsibility for medical insurance expenses goes back to the time the parties were married.

\*                                              \*                                              \*

7. This is a final order in this matter.

Mr. Nelson filed a timely appeal from this Order. Upon review of the appellate record, this Court determined that the above Order was not final because same did not adjudicate the Children's claim for legal separation, which claim was not removed by the amendment to the complaint, *see supra.* Tenn. R. App. P. 54.02. By Order of this Court, the parties were given twenty days in which to procure a final judgment. In response, the parties supplemented the record with a November 15, 2007 "Consent Order." This Order dismissed the claim for legal separation. We note, however, that neither this Order, nor the November 30, 2006 Order, *supra*, adjudicates Mr. Nelson's "Motion to Revoke Durable Power of Attorney." Nonetheless, the "Consent Order" of November 17, 2007 does contain the Tenn. R. Civ. P. 54.02 language. Based upon the inclusion of the necessary language, this Order is appealable as of right. Because Mr. Nelson has raised issues concerning denial of his "Motion to Revoke Durable Power of Attorney" in this appeal, we conclude, inferentially, that the trial court denied same.

On appeal, Mr. Nelson raises three issues for appeal, as stated in his brief:

I. Whether the Chancellor erred in his interpretation of the Antenuptial Agreement (prenuptial) entered into by the parties on March 17, 1993.

II. Whether the Chancellor erred in not removing the children of Mrs. Nelson as her attorneys-in-fact when the court learned of the transfers and dissipation of her assets.

III. Whether the Chancellor erred in not restoring Mrs. Nelson's estate with the land the children transferred and the funds they converted to their own use.

This Court reviews findings of fact made by a trial court sitting without a jury under a *de novo* standard with a presumption of correctness for those findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d) (2007). This Court reviews a trial court's conclusions of law *de novo* with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn.Ct.App.1989)). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn.Ct.App.1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997).

Mr. Nelson's first issue concerns the trial court's interpretation of the "Antenuptial Agreement" entered by and between Mr. Nelson and Mrs. Nelson.[2] The relevant paragraph of that agreement reads, in pertinent part, as follows:

> 3. Payment of Daily Living Expenses. Mr. Nelson shall be responsible for providing food and other daily necessities for the parties following their marriage....

The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Ballard v. North American Life & Casualty Co.*, 667 S.W.2d 79 (Tenn.Ct.App.1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat'l Bank*, 620 S.W.2d 526 (Tenn.Ct.App.1981). A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d at 462 (citing *Oman Constr. Co. v. Tennessee Valley Authority*, 486 F.Supp. 375, 382 (M.D.Tenn.1979)), nor can this Court create an ambiguity where none exists in the contract. *Cookeville P.C.*, 884 S.W.2d at 462 (citing *Edwards v. Travelers Indem. Co.*, 201 Tenn. 435, 300 S.W.2d 615, 617-18 (1957)). The interpretation of a written contract is a matter of law and not of fact, *see Rainey v. Stansell*, 836 S.W.2d 117 (Tenn.Ct.App.1992). Therefore, we review the trial court's finding

_____

[2] There is no indication, or allegation, in the record that the "Antenuptial Agreement" is not a valid and enforceable agreement between Mr. Nelson and Mrs. Nelson.

concerning the agreement between these parties *de novo* upon the record with no presumption of correction accompanying the trial court's conclusions of law. *See* Tenn. R. App. P. 13(d); ***Waldron v. Delffs***, 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998); ***Sims v. Stewart***, 973 S.W.2d 597, 599-600 (Tenn. Ct. App. 1998).

From the unambiguous language of the agreement between Mr. Nelson and Mrs. Nelson, Mr. Nelson is financially responsible for food and "other daily necessities." The sole question, therefore, is whether the costs of Mrs. Nelson's care at the nursing facility constitute "other daily necessities," for which Mr. Nelson would be contractually obligated to pay. This issue presents us with a mixed question of law and fact. Specifically, the trial court was faced with a question of law in determining the usual, natural, and ordinary meaning of the word "necessities." Black's Law Dictionary 1029 (6th ed. 1990) defines the word "necessary," in relevant part, as follows:

> This word must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with, or it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought.

*Id*. (citations omitted).

Because the disputed term in this case, "necessities," is the "quality or state of being necessary," Black's Law Dictionary 1030 (6th ed. 1990) it is a mercurial term, which would vary from person to person. What is necessary, or a necessity, for one person's daily existence is not one size fits all. Rather, it is a varying term, which must be construed in the context of the facts of each particular case. Consequently, in making its determination concerning the meaning of "other daily necessities," the trial court was not only faced with a question of law, but was also faced with a question of fact. Thus, while the underlying facts are reviewed under a *de novo* standard with a presumption of correctness, *see* Tenn. R. App. P. 13(d), the legal conclusion arising from those facts is reviewed *de novo*, without such a presumption. ***See Newcomb v. Kohler Co.***, No. W2005-02161-COA-R3-CV, 2006 WL 2535396, at *28 (Tenn.Ct.App. Sept. 5, 2006).

As set out in the Order above, under the particular facts of this case, the trial court specifically found that the expenses associated with Mrs. Nelson's care are daily necessities for her. Because this decision hinged upon the evidence adduced at the hearing, its was a finding of fact, which this Court reviews with a presumption of correctness. Tenn. R. App. P. 13(d). We have reviewed the entire record in this case, and conclude that the evidence supports the trial court's finding that, because of Mrs. Nelson's advancing Alzheimer's, it is necessary that she live in the

nursing facility. Although it is probable that neither Mrs. Nelson, nor Mr. Nelson, thought, at the outset of their marriage, that either of them would need long-term care, that has, unfortunately, become Mrs. Nelson's reality. Based upon the clear and unambiguous language of the agreement, and the specific facts of this case as evidenced by the record, we find that the trial court did not err in holding Mr. Nelson responsible for Mrs. Nelson's expenses associated with the nursing facility.

Based upon our finding that Mr. Nelson is contractually obligated to pay Mrs. Nelson's living expenses, including the costs of nursing care, Mr. Nelson's issues concerning whether the trial court erred in denying his motion to remove Mrs. Nelson's Children as her attorneys-in-fact is moot. Whether the Children have acted irresponsible or fraudulently in dealing with Mrs. Nelson's finances and other business, has no bearing on the question of whether Mr. Nelson is obligated, under the contract he entered with Mrs. Nelson, to pay for her daily necessities. Mrs. Nelson's Children have asked for their attorney's fees in defending this appeal. In reviewing the record and considering this issue, we conclude that this request should be denied.

For the foregoing reasons, we affirm the Order of the trial court. Appellees' request for attorney's fees in defending this appeal is denied. Costs of this appeal are assessed to the Appellant, Harold Elliott Nelson, and his surety.

_____
W. FRANK CRAWFORD, JUDGE