# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
November 7, 2007 Session

## YELLOW TRANSPORTATION, INC. v. LARRY WARD

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-04-2536-I     Walter L. Evans, Chancellor**

---

**No. W2007-00946-COA-R3-CV - Filed July 31, 2008**

---

Employer appeals the trial court's grant of partial summary judgment in favor of Employee.  The parties entered into a settlement agreement on Employee's workers' compensation claim.  The agreement included language that Employee would not seek further employment with Employer. In granting partial summary judgment to Employee, the trial court found that the disputed language of the agreement did not create a contractual obligation on the part of Employee.  We reverse and grant summary judgment in favor of Employer.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which HOLLY M. KIRBY, J., joined, and W. FRANK CRAWFORD, J., did not participate.

Jeff Weintraub, J. Gregory Grisham, Daniel S. Lovett, Memphis, TN, for Appellant

Michael C. Skouteris, J. Chandley Crawford, Gail O. Mathes, Memphis, TN, for Appellee

**OPINION**

Larry Ward ("Employee") was employed by Yellow Transportation, Inc. ("Yellow Transportation," or "Employer") as a City Driver at its Memphis, Tennessee terminal. As a driver-employee, Mr. Ward was a member of the bargaining unit represented by Local Union #667 of the International Brotherhood of Teamsters. The terms of Mr. Ward's employment were governed by the National Master Freight Agreement, as modified by the Southern Region Over-the-Road Motor Freight Supplemental Agreement.

On or about November 25, 2000, Mr. Ward suffered the second of two back injuries that were found to be compensable workers' compensation injuries.[1] As a result of this injury, Mr. Ward underwent disk laminectomy surgery (his second such surgery). This second surgery was performed by Dr. John Brophy. Following the surgery, on or about August 22, 2001, Dr. Brophy imposed a permanent, 40-pound lifting restriction on Mr. Ward.

Yellow Transportation's requirements for the position of City Driver include a 75-pound lifting requirement. Because Mr. Ward was limited to a 40-pound lifting restriction, he was unable to perform one of the essential functions of his job. Following negotiations, Yellow Transportation and Mr. Ward reached a tentative settlement of Mr. Ward's workers' compensation claim on or about April 19, 2004.

According to the affidavit of John Cannon, the attorney on Mr. Ward's original workers' compensation case, after the tentative settlement was reached, Mr. Ward undermined that agreement by misrepresenting his condition to Dr. Brophy in order to have the permanent, 40-pound lifting restriction waived, to wit:

> After the settlement was reached, Ward went to Dr. Brophy on that same day, April 19, 2004. According to Dr. Brophy's notes, Ward told him that he had been working the past two and a half years as a truck driver within the 40-pound lifting restriction, without difficulty. Ward further told Dr. Brophy that he needed an unrestricted clearance to work in order to apply for a position with the U.S. Post Office, but that the position he was applying for would not require lifting more than 40 pounds. Relying on these misrepresentations, Dr. Brophy lifted the permanent restrictions.

Dr. Brophy's notes, which were attached as an exhibit to Mr. Cannon's affidavit describe the incident as follows:

---

[1] The first injuries, suffered in 1999, are not the subject of the current litigation except to the extent that this earlier injury, coupled with the second injury, resulted in a permanent 40-pound lifting restriction.

Postoperatively, [Mr. Ward's] pain improved and he requested an opportunity to return to work at full duty. At that time, we discussed the fact that his primary risk long term was back pain and he should refrain from lifting over 40 pounds. Mr. Ward insisted on returning to work at full duty with Yellow Freight; however, the job description required lifting to 75 pounds. As Mr. Ward refused to follow the guidelines, he was designated with a permanent 40 pound lifting restriction which subsequently disqualified him from return[ing] to work at Yellow Freight. He returned to my office on 19 April, 2004 reporting that he had been working the past two and a half years as a trucker within the 40 pound lifting restriction and was having no difficulty. He indicated to me that he was now applying for a job which did not require lifting over 40 pounds; however, he needed administrative clearance to return to work at full duty without restriction. As stated in my note of 19 April, 2004, we discussed the importance of his physical conditioning and minimizing heavy lifting.

On April 26, 2004, Mr. Ward filed a Grievance under the company's collective bargaining agreement with Teamsters Local 667, seeking reinstatement at Yellow Transportation based upon the fact that Dr. Brophy had waived the lifting restriction. Upon learning of the filing of the Grievance, counsel for Yellow Transportation notified Dr. Brophy of the situation. Dr. Brophy's chart notes read, in pertinent part, as follows:

Counsel for Yellow Freight...notified me today by phone that Mr. Ward is now demanding reinstatement to his old job after agreeing to a settlement of his Workers' Compensation claim related to his last surgery, based on my clearance to return to work on 19 April, 2004. Mr. Ward obtained this clearance under false pretenses. He has apparently lied about his employment as a trucker for the past 2-1/2 years as well as his plan to apply for a job at the Post Office which did not require lifting over 40 pounds. Based on our discussion in 2001, he clearly understood that the job at Yellow Freight entailed lifting up to 75 pounds. Mr. Ward is playing games and apparently cannot be trusted to follow the basic medical guideline of limiting his lifting to under 40 pounds. His permanent 40 pound lifting restriction is therefore reinstated as it was changed under false pretenses on 19 April, 2004.

On May 26, 2004, Mr. Cannon sent Mr. Ward's attorney a letter, informing him of Mr. Ward's conduct. Mr. Cannon then insisted, as a condition for continuing with the settlement, that the following language be inserted into the Settlement Agreement:

-3-

Section 2.4 Industrial Disability Rating: The Parties agree that the injury has resulted in Plaintiff suffering an industrial disability rating of 36.8% to the body as a whole taking into account Employee's age, education, skills and training, local job opportunities, and capacity to work at types of employment available in Employee's disabled condition. The Employee acknowledges that due to his limitations, he does not believe that he can carry out the essential job functions of any job or position to which he may be qualified, with or without accommodations with the employer, and therefore has elected not to return to work for Yellow Freight now or in the future.

With the inclusion of the new language, the Settlement Agreement was finalized. On June 18, 2004, the Settlement Agreement was approved by the Tennessee Department of Labor, Division of Workers' Compensation Section. The Workers' Compensation case, which had been filed in the Circuit Court at Shelby County, was dismissed with prejudice by consent order of June 21, 2004.

Based upon the Section 2.4 language of the Settlement Agreement, by letter of August 12, 2004, Yellow Transportation removed Mr. Ward from its seniority roster. On August 26, 2004, Mr. Ward filed a second formal Grievance with the Teamsters Local Union No. 667, claiming that he was improperly and unjustifiably removed from the seniority roster. Consequently, Mr. Ward requested that he be reinstated to full duty with seniority and all lost earnings. In response to this Grievance, on October 6, 2004, Yellow Transportation filed a Motion to Enforce the Settlement Agreement. This motion was denied on the grounds that, because the Workers' Compensation action had been dismissed with prejudice, the trial court did not have jurisdiction to rule on the Motion.

On December 17, 2004, Yellow Transportation filed a Complaint for Breach of Contract and Injunctive relief against Mr. Ward, asserting that the August 26, 2004 Grievance filed by Mr. Ward violated the Settlement Agreement. Consequently, Yellow Transportation asked the court for an order enforcing the Settlement Agreement, and for an injunction prohibiting Mr. Ward from seeking further employment with Yellow Transportation and from pursuing the Grievance. On January 18, 2005, Mr. Ward filed his Answer, in which he denies the material allegations of the Complaint. Contemporaneously therewith, Mr. Ward filed a counter-complaint against Yellow Transportation, seeking judicial modification and/or rescission of the Settlement Agreement, and alleging common-law retaliatory discharge, violation of the Tennessee Human Rights Act, and invasion of privacy. Yellow Transportation answered the counter-complaint on February 18, 2005, denying the material allegations contained therein.

On March 7, 2005, the trial court issued a Temporary Injunction, which enjoined Mr. Ward, or others acting on his behalf, from "participating in, assisting, or in any way furthering the processing of Ward's August 26, 2004 Grievance via Teamsters Local 667 against Plaintiff Yellow Transportation, Inc. seeking reinstatement, employment, or re-employment on the Yellow

Transportation, Inc. Seniority list, or engaging in any other efforts or activities designed to seek such reinstatement, employment, or re-employment" pending a full hearing.

On August 10, 2005, Mr. Ward filed a Motion for Summary Judgment.[2] In his motion, Mr. Ward asserts that the trial court should rescind or judicially modify the terms of the Settlement Agreement based, *inter alia*, upon Mr. Ward's assertions that: (1) the Settlement Agreement is unenforceable because the last sentence of Paragraph 2.4 [*see supra*] was a "force removal" clause, which is illegal under Tennessee law; (2) the Settlement Agreement lacked mutual assent because the last sentence of Paragraph 2.4 is "vague and ambiguous;" and (3) the Settlement Agreement lacked adequate consideration and, as such, did not constitute an enforceable bargained-for exchange.

On September 30, 2005, Yellow Transportation responded to Mr. Ward's Motion. In conjunction with the response, Yellow Transportation filed its own Motion for Summary Judgment, arguing that the language of Paragraph 2.4 of the Settlement Agreement is plain and unambiguous and, therefore, should be enforced according to the intent of the parties (as expressed in the plain language contained in the Settlement Agreement).

Following a hearing, on March 30, 2007, the trial court entered its "Order on Cross-Motions for Summary Judgment," which Order reads, in relevant part, as follows:

> 1. As held in previous hearings in this matter, the Court finds that the language contained in the last sentence of Section 2.4 of the Settlement Agreement entered into by the parties is clear and unambiguous.
>
> 2. The Court's reading of the plain language of the last sentence of Section 2.4 is as follows: Section 2.4 provides Mr. Ward with the option or election to seek employment at Yellow and does not preclude Ward from seeking employment with Yellow, if he reasonably believes he can perform the essential functions of his former job.
>
> 3. It is the Court's opinion that the last sentence of Section 2.4 is a unilateral recognition of Mr. Ward's belief as to his condition at the time of the execution of the Settlement Agreement. The Settlement Agreement does not say that it is conditional upon Mr. Ward's agreeing not to return to work at Yellow.

_____

[2] Because Mr. Ward's Motion for Summary Judgment addressed only the rescission/judicial modification of the Settlement Agreement, and did not address Mr. Ward's claims for retaliatory discharge, THRA, or invasion of privacy, the trial court treated Mr. Ward's motion as a motion for partial summary judgment.

4. Mr. Ward's statement that he now believes he can perform the essential functions of the driver's position at Yellow serves as his election to attempt to seek employment with Yellow. The Court and the parties recognize that Mr. Ward remains subject to a 40-pound lifting restriction that would currently prevent his employment as a driver with Yellow; however Ward believes the 40-pound restriction is unenforceable because of his belief that it was re-instated under false pretenses.

\*                                        \*                                        \*

IT IS, THEREFORE, ORDERED that:

1. Yellow's Motion for Summary Judgment is denied, and Mr. Ward's Motion for Summary Judgment is granted. As such, Mr. Ward may seek employment with Yellow.

2. Based on Mr. Ward's attorneys' notice in open court, his Counter-Complaint and all its remaining claims contained therein are hereby voluntarily dismissed, without prejudice.

Yellow Transportation appeals and raises two issues for review as stated in its brief:

1. Whether the trial court erred in denying summary judgment to Appellant, in that it failed to interpret the plain and unambiguous language of the Agreement between the parties, in accordance with the law of contract interpretation in Tennessee, to mean that Section 2.4 of the Agreement, read in its entirety, constitutes an election by Appellee not to return to work for Appellant now or in the future.

2. Whether the trial court erred in granting Appellee's motion for partial summary judgment for the same reasons as stated in 1., above.

It is well settled that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. ***See Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***See id.*** In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id*. at 211 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain*, 926 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is de novo on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Ballard v. North American Life & Casualty Co.*, 667 S.W.2d 79 (Tenn.Ct.App.1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat'l Bank*, 620 S.W.2d 526 (Tenn.Ct.App.1981). A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d at 462 (citing *Oman Constr. Co. v. Tennessee Valley Authority*, 486 F.Supp. 375, 382 (M.D.Tenn.1979)), nor can this Court create an ambiguity where none exists in the contract. *Cookeville P.C.*, 884 S.W.2d at 462 (citing *Edwards v.. Travelers Indem. Co.*, 201 Tenn. 435, 300 S.W.2d 615, 617-18 (1957)). The interpretation of a written contract is a matter of law and not of fact, *see Rainey v. Stansell*, 836 S.W.2d 117 (Tenn.Ct.App.1992). Consequently, construction of the contract is particularly suited to disposition by summary judgment. *Id.* at 119. Therefore, we review the trial court's finding concerning the agreement between these parties *de novo* upon the record with no presumption of correction accompanying the trial court's conclusions of law. *See* Tenn. R.App. P. 13(d); *Waldron v. Delffs*, 988 S .W.2d 182, 184 (Tenn.Ct.App.1998); *Sims v. Stewart*, 973 S.W.2d 597, 599-600 (Tenn.Ct.App.1998).

The contention between these parties involves the interpretation of Paragraph 2.4 of the Settlement Agreement, which Paragraph is set forth in its entirety above. On appeal, Yellow Transportation asserts, *inter alia*, that the plain and unambiguous language of this paragraph contractually obligates Mr. Ward to refrain from seeking employment with Yellow Transportation not only at the time that the agreement was entered, but also going forward. Mr. Ward argues, and the trial court found, that the disputed language is merely an acknowledgment of Mr. Ward's

subjective belief that he, at the time of the making of the agreement, was unable to perform the essential functions of any job at Yellow Transportation, regardless of accommodation; and that, because of his current belief, he would not seek employment with Yellow Transportation. Because the trial court found that the "election" not to seek employment was based solely upon Mr. Ward's subjective opinion as to his ability to perform said job, if and when Mr. Ward subjectively changed his mind, and decided that he was, in fact, able to perform, he could, according to the trial court's interpretation, seek employment with Yellow Transportation at that time.

We agree with the trial court that the language in Paragraph 2.4 of the Settlement Agreement is plain and unambiguous. We disagree, however, with the trial court's interpretation of the language.

The trial court characterizes Paragraph 2.4 as a "unilateral recognition of Mr. Ward's belief as to his condition at the time of the execution of the Settlement Agreement," and says that it "provides Mr. Ward with the option or election to seek employment at Yellow and does not preclude Ward from seeking employment with Yellow, if he reasonably believes he can perform the essential functions of his former job."

We respectfully disagree with this analysis of the Agreement. In the Agreement, Ward "acknowledges that due to his limitation, he does not believe that he can carry out the essential job functions of any job or position to which he may be qualified, with or without accommodations with [Yellow Transportation]. . . ." This language reflects the reason for Ward's decision, which may have been important in receiving the prior trial court's approval of the settlement of Ward's worker's compensation claim, to show that his decision was voluntary and had a reasonable basis.[3]

At this point, however, the reason for Ward's decision is not determinative. The operative language in the Settlement Agreement to be interpreted at this juncture is the statement that Ward "has elected not to return to work for Yellow Freight Systems now or in the future." WEBSTER'S DICTIONARY defines the term "elect" as "to choose." *Webster's II New College Dictionary* 369 (3d ed. 2005). Thus, "has elected" means that Ward has made a choice or decision not to return to work for Yellow Transportation. Addition of the phrase "now or in the future" clearly means that Ward has made a decision not to *ever* return to work for Yellow Transportation.

From our review of the Settlement Agreement as a whole, it is also clear that the monies paid to Ward under the Agreement were consideration in part for Ward's election not to ever return to work for Yellow Transportation. Having made the decision not to ever return to work for Yellow

___

[3] The briefs on appeal refer to Department of Labor procedural safeguards pertaining to an employee who is required to give up his job in order to receive his worker's compensation settlement. The prefatory language on the reason for Ward's decision, as well as the use of the word "election" in the Agreement, may have been to indicate that Ward was not "required" to give up his job. Regardless, the time for Ward to raise the issue of whether his decision was "forced" or whether the Department of Labor safeguards are applicable would have been when the Settlement Agreement was approved, or in an appeal or Rule 60 motion on the prior trial court's approval of the Settlement Agreement. It is undisputed that Ward was represented by counsel in signing the Agreement.

Transportation, and having accepted consideration from Yellow Transportation in return for it, Ward cannot now renege on his agreement.

Therefore, we reverse the trial court's grant of partial summary judgment in favor of Ward, and reverse the trial court's denial of Yellow Transportation's motion for summary judgment. The cause is remanded with directions to enter an order granting Yellow Transportation's motion for summary judgment.

The decision of the trial court is reversed, and the cause is remanded as set forth above. Costs of this appeal are assessed against Appellee Larry Ward, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.